[No. 34079. Department One. February 20, 1958.]

C. S. HOLMES *et al., Respondents,* v. BORDER BROKERAGE COMPANY, INC., *Appellant.*[1]

*Hugh B. Horton,* for appellant.

*Le Cocq, Simonarson & Durnan* and *Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

HUNTER, J.—This is an appeal from a judgment granting the plaintiffs injunctive relief and requiring the defendant corporation to file and obtain a new corporate name in an action brought to restrain the use of a trade name.

A detailed chronology of the use of the trade name "Border Brokerage Company," now sought to be used by both the plaintiffs and defendant, is necessary to understand and evaluate their respective positions.

[1]Reported in 321 P. (2d) 898.

Ben S. Armstrong and Clarence S. Holmes, both individually licensed as customhouse brokers by the Federal government, formed a partnership in 1927 to engage in the customhouse brokerage business under the firm name of "Border Brokerage Company." The partnership was licensed as such by the Federal government, having qualified under the rules and regulations of the customs department which required at least two officers of a corporation, or *two members* of a partnership, to have customhouse broker's licenses in order to engage in such business as a corporation or partnership.

The following year, the partnership incorporated under the same firm name and obtained a corporate license from the customs department of the Federal government to conduct its business. It continued to operate under this license until 1942, when, for tax purposes, the corporation was dissolved and inquiry was made to the customs department as to what further action, if any, was necessary. No reply was received in respect to this inquiry. However, Armstrong and Holmes, intending to continue their business as a partnership, included a bond for the Border Brokerage Company, *not incorporated,* in their letter of notification of the dissolution of the corporation. The customs department informed them it would be necessary to increase the bond to thirty thousand dollars, and the bond was promptly posted. Nothing was done by either the government or Holmes and Armstrong concerning the actual corporate license, which remained in the office of the company until about December, 1950, when a representative of the customs department discovered it during an inspection. Thereafter, the license was removed and revoked.

Subsequently, A. G. Grasher and C. L. Croft, former employees of the corporation, came into the picture as the successors of Armstrong, having purchased his interest. On January 1, 1951, plaintiffs Holmes, Grasher, and Croft formed a new partnership to continue to do business as the "Border Brokerage Company," This new partnership could not obtain a brokerage license, since only one member, Holmes, was a duly licensed broker. Grasher

had made application for a broker's license the preceding year (1950), but his license had not, as yet, been granted. Therefore, from January 1, 1951, to September 16, 1953, all the customhouse brokerage business of the partnership was carried on under the name of "C. S. Holmes." The plaintiffs made their position known to the United States customs bureau by a letter dated October 25, 1951.

The "Border Brokerage Company" (the new partnership), in the meantime, engaged in the insurance business under the firm name, having obtained a license from the state insurance commissioner and a certificate of registration from the state tax commission of the state of Washington. It occupied the same office, carried a bank account under the firm name, and at all times carried two and sometimes three listings in the telephone book of the Farmers Mutual Telephone Company. This arrangement continued until September 16, 1953, when the partnership received a license from the Federal government, it having qualified for such license when Grasher obtained his individual license on August 16, 1953.

Shortly after the license was granted to Grasher, and prior to the time the plaintiffs were granted their partnership license, the defendant "Border Brokerage Company, Inc.," came into existence on September 4, 1953, by filing its articles of incorporation with the secretary of state of the state of Washington. The primary object of the defendant corporation, as stated in its articles, was to engage in the customhouse brokerage business with its place of business at Sumas, Whatcom county, Washington.

Upon learning that the defendant corporation was operating in the same customs district, the plaintiffs notified Norman G. Jensen, one of the incorporators of the defendant corporation, of their trade-name right and advised him not to use the name. Thereafter, the plaintiffs commenced this action for an injunction because of the confusion they allege had arisen and which would increase if the defendant corporation carried out its primary business as a customhouse broker in the same customs district.

During the trial, the evidence revealed that Norman G. Jensen and Gordon Jensen, two of the incorporators of the defendant corporation, were also engaged in the customhouse brokerage business as "Norman G. Jensen, Inc.," with Gordon Jensen as its president. The Jensen corporation opened an office in Blaine, Washington, in October, 1953. Norman G. Jensen was called as an adverse witness by the plaintiffs and testified in part, as follows:

"Q. How did you happen to pick on the name of Border Brokerage Company? A. I wanted to buy Ben Armstrong out. . . . Q. All right. You didn't buy him out, did you? A. No. . . . Q. Mr. Jensen, why did you choose the name of Border Brokerage Company? A. (No reply). Q. Why did you pick on that particular name? A. I just had a feeling that Mr. Armstrong would sell to us, and then I wanted, if he had, I was ready to pay him most any price he asked for his business. Had he sold it to us we would have continued the same name. Q. In other words, you knew that the name was being used, didn't you? A. Yes. But my brother, Gordon, and I figured that we could buy his business, use that name, incorporate. The name, we knew it wasn't a corporation, because everybody in the customhouse here in Seattle knew that the license had been kicked out and that the old corporate name wasn't going."

The plaintiffs contended that confusion resulted from the use of the two names in the same customs district, as evidenced by mail, loss of clients and loss of business. The evidence disclosed that all documents in the customhouse brokerage business are processed by the collectors of the customs liquidation office; that liquidations are posted by name and number, and Sumas, Blaine, and Seattle are all in the same customs district.

At the completion of the trial, the court found that there had been no abandonment of the name "Border Brokerage Company"; that the names were confusing, and entered judgment for the plaintiffs from which the defendant has appealed. The judgment provides, in part, as follows:

" . . . that defendant be and it is hereby enjoined and restrained forever from the display or use in any way of a firm name employing the name 'Border' or any similar name

to plaintiffs' firm name 'Border Brokerage Company,' in connection with the handling or solicitation of customs brokerage on shipments between the United States and Canada, and

". . . that defendant corporation be hereby required to file for and obtain forthwith a new corporate name not employing the word 'Border' or any name similar to plaintiffs' firm name 'Border Brokerage Company,' . . ."

Appellant assigns as error certain findings of fact and conclusions of law entered, proposed findings refused, and the injunctive relief granted in the judgment.

The appellant makes these basic contentions: (1) The respondents abandoned the use of the name "Border Brokerage Company"; (2) the respondents have operated their business in violation of the Federal customs regulations for a number of years and should be denied equitable relief under the "unclean hands doctrine"; (3) no confusion has resulted from the use of the firm name by the appellant corporation, and the injunction granted is too broad and sweeping.

In the case of *Seattle, etc. Ass'n v. Amalgamated Ass'n, etc.*, 3 Wn. (2d) 520, 101 P. (2d) 338 (1940), we reviewed extensively our previous decisions involving the right to use a trade name and adopted therein eight rules of law for guidance in trade name cases. These rules were later cited in *Foss v. Culbertson*, 17 Wn. (2d) 610, 136 P. (2d) 711 (1943). We deem it advisable for the purpose of this appeal to again state these rules, which are as follows:

"First: The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"Second: A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"Third: The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"Fourth: To acquire the right to use a particular name, it is not necessary that the name be used for any consider-

able length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"Fifth: A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"Sixth: A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"Seventh: The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"Eighth: Prior right to the use of a name will be protected by injunction against others using it unfairly."

The appellant, in an effort to sustain its position, relies on rules four and five. We agree with the appellant that, if the firm name "Border Brokerage Company" was abandoned by the respondents, it had a legal right to appropriate and use the name. However, this contention is not sustained by the evidence. While it is true that from January 1, 1951, until September 16, 1953, the respondents did not and could not use the firm name *in the customhouse brokerage business,* the evidence discloses that they could and did legally use the name for other purposes heretofore stated in this opinion. Further, it is evident from the record that it was not the intention of the respondents to abandon the name in respect to the brokerage business. The actual use for that purpose was held in abeyance pending approval of Grasher's individual broker's license, which was necessary to qualify the partnership for a license.

In *Olympia Brewing Co. v. Northwest Brewing Co.,* 178 Wash. 533, 35 P. (2d) 104 (1934), we held that mere disuse of a trade name is not alone sufficient to constitute an abandonment, but disuse must be coupled with an actual intent to abandon. See, also, *Washington Barber etc. Co. v. Spo-*

*kane etc. Co.,* 171 Wash. 428, 18 P. (2d) 499 (1933); *Foss v. Culbertson, supra; Hannis Distilling Co. v. Torrey Co.,* 32 App. D. C. 530.

The record clearly supports the trial court's finding that there was no abandonment of the trade name "Border Brokerage Company" by the respondents.

The appellant's next contention is that the respondents acted in bad faith and should be denied equitable relief. There does appear to have been a technical violation of customs regulations by the Border Brokerage Company from 1942 until December, 1950, by failure of the partnership to be licensed and the corporation license not having been surrendered when the corporation was dissolved. However, the Federal government was informed of the dissolution and accepted a term bond for the "Border Brokerage Company," *not incorporated.* Further, after the formation of the new partnership, the government was fully informed of the manner in which the business was operated. Therefore, there does not appear to have been any willful violation by the respondents. In any event, the customs department did not impose any penalties against the Border Brokerage Company, and having again granted the partnership a license, we cannot say any violation was such, under the circumstances, as to come within the "unclean hands doctrine," requiring a denial of equitable recognizance to the respondents.

The appellant's final contention is that its use of the trade name was not confusing or misleading, or, in any event, it should be permitted to operate as the "Border Brokerage Company, Inc.," in lines of business other than the brokerage business in the Seattle area.

Our examination of the record discloses there has been confusion in the past, and we are convinced that it would increase in the future, if the appellant was allowed to operate any business under the name "Border Brokerage Company, *Inc.,*" in Seattle, where the respondents' office is located and which is in the same customs district as Blaine. Considering that the names are identical (except for *Inc.,*) and not merely similar, together with the nature of the respondents'

business and all the other evidence in the case, we cannot say that the injunctive relief granted is too broad or sweeping.

The evidence supports the judgment of the trial court. The judgment is affirmed.

HILL, C. J., FINLEY, WEAVER, and OTT, JJ., concur.