TRADEWELL STORES, INC., *Appellant,* v. T. B. & M.,
INC., *Respondent.*

*Michael R. Rayton* (of *Ryan, Carlson, Bush, Swanson &
Hendel*), for appellant.

*William R. Garland,* for respondent.

PEARSON, J.—This is an action for trade name infringe-

ment and unfair competition brought in Kitsap County Superior Court by plaintiff, Tradewell Stores, Inc., against defendant, T. B. & M., Inc. The trial court's unchallenged finding was that plaintiff had appropriated a trade name, "Family Market," to denominate a discount food store operation in Shelton, (Mason County) Washington, and that defendant's later use of the name, "Family Mark-It," to describe a similar discount food store in Bremerton, (Kitsap County) Washington was an infringement.

The trial court enjoined defendant from the unqualified use of the name "Family Mark-It" but allowed the use of that name "when qualified by additional words either before or after, which are of a personal or geographic nature." Defendant chose to satisfy the injunction by use of the prefix "Al's." Plaintiff's appeal seeks to broaden the scope of the injunction and contends that the trial court erred in refusing to allow attorney's fees under RCW 19.86.090, a section of Washington's Consumer Protection Act. We affirm the injunction, but hold that attorney's fees should have been allowed. Defendant has not cross-appealed.

Plaintiff's discount store opened March 4, 1970 in Shelton. The assumed name was filed with the county clerks in both Mason and Kitsap Counties, in compliance with RCW 19.80.[1] No registration of the name was made with the Secretary of State under RCW 19.77, which pertains to trademark registration.

In June, 1970, without knowledge of plaintiff's Shelton discount store, defendant commenced a similar store in Bremerton, which is about 35 miles from Shelton. The assumed name "Family Mark-It," was registered with the Secretary of State under RCW 19.77 and with the Kitsap County Clerk under RCW 19.80. The former registration

---

[1] RCW 19.80, while entitled "Trade Names," is directed principally against concealed partnerships, and its purpose is to advise anyone extending credit to a business operating under an assumed name as to who are the real persons conducting the business. *Bacon v. Gardner,* 38 Wn.2d 299, 229 P.2d 523 (1951). This statute has no direct relevancy to this case.

established that no similar name had previously been registered under the trademark statute. The filings were made on May 7, 1970 and October 23, 1970 respectively. When plaintiff discovered defendant's use of the similar name for a similar business endeavor, this action was commenced.

The two food store operations were identical in function. Food items were placed on shelves in the original shipping cartons. The price was marked on the shipping carton only. Customers were provided with grease pencils with which to mark the price on each individual item selected before taking it to the check-out counter. This mark-it-yourself method enabled the stores to function with fewer than normal employees and pass on the savings from a lower overhead to the customers.

With reference to the competitive aspects of the two businesses, the trial court found that Bremerton and Shelton each has its own trading areas, with Bremerton being dominant and larger. However, the court found that there is a substantial middle area between where trading does overlap, with Bremerton generating the stronger attraction for a greater distance. This middle area, the court found, was not heavily populated, but was devoted primarily to forestry, recreational and residential use. These findings are not challenged on appeal.

With reference to the trade names used by plaintiff and defendant, the trial court found both "Family Market" and "Family Mark-It" to be arbitrary and fanciful names and capable of appropriation as trade names. It further found that the names are confusing to the ear and confusing to the eye of all but the extremely careful person. These findings are likewise unchallenged on appeal.

The principal attack on the narrow scope of the injunction centers around plaintiff's challenge to the court's finding and conclusion that the confusion would be eliminated by adding a geographical or personal prefix or suffix to the name "Family Mark-It."

Since defendant does not appeal the award of an injunc-

tion itself,[2] the only question regarding the injunction is whether or not it was sufficiently broad to protect plaintiff's proprietary interest in its trade name.

While we agree that defendant's use of the name "Al's Family Mark-It" does not greatly change the original trade name, we believe the trial court was justified in finding that the change would eliminate confusion under the circumstances of this case.

██ We point out initially that a suit for an injunction

---

[2]The award of the injunction is governed by the eight rules of law recently reaffirmed in *Holmes v. Border Brokerage Co.*, 51 Wn.2d 746, 321 P.2d 898 (1958) at 750:

"First: The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"Second: A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"Third: The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"Fourth: To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"Fifth: A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"Sixth: A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"Seventh: The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"Eighth: Prior right to the use of a name will be protected by injunction against others using it unfairly."

(Relying on: *Seattle Street Ry. & Municipal Employees Relief Ass'n v. Amalgamated Ass'n*, 3 Wn.2d 520, 101 P.2d 338 (1940); *Foss v. Culbertson*, 17 Wn.2d 610, 136 P.2d 711, 48 A.L.R. 1257 (1943).

is an equitable proceeding with considerable inherent discretion vested in the trial court. Appellate courts are required to give great weight to the trial court's exercise of discretion in this type of case. *See Coy v. Raabe,* 77 Wn.2d 322, 462 P.2d 214 (1969).

In reviewing the record, we note at least four factors that influenced the trial court in granting rather limited injunctive relief, and those factors, we think, constitute substantial evidence to support the scope of the injunctive relief allowed by the trial court. *Coy v. Raabe, supra.*

▇ First, the name "Family Market" is only marginally appropriable. While we agree that it may be appropriable, we take pains to point to the closeness of the issue, as did the trial court in its oral decision.

In considering this type of issue, a distinction is drawn between generic or purely descriptive words and phrases that are publici juris—the common property of all—and words or phrases which do not describe or suggest the nature of the business activity. For example, in *Charcoal Steak House of Charlotte, Inc. v. Staley,* 263 N.C. 199, 139 S.E.2d 185 (1964), the name "Charcoal Steak House" was held descriptive of the activity of the business and not appropriable. However, in *National Bd. of YWCA of United States v. YWCA of Charleston, S.C.,* 335 F. Supp. 615 (D. S.C. 1971) the name "Young Women's Christian Association" was held to be appropriable and not suggestive of the services rendered by the association.

In the instant case, "Family Market" does not strictly describe a retail grocery operation in the same sense that "Charcoal Steak House" describes a particular type of eating establishment. "Family Market" is descriptive and does moderately suggest a retail business designed to attract heads of households as clientele. Despite this fact, there is probably sufficient indefiniteness and vagueness remaining to render the phrase appropriable. However, the closeness of the question is a factor which we feel the court may consider in determining the scope of the injunctive relief.

Secondly, the trial court stated the obvious in its oral

decision, namely that "Family Market" is not a very unusual name. We agree. There is a paucity of originality in the name "Family Market." *See Houston v. Berde,* 211 Minn. 528, 2 N.W.2d 9 (1942) where the lack of uniqueness of "Food Centre" was discussed. Likewise, in *Food Fair Stores, Inc. v. Food Fair, Inc.,* 83 F. Supp. 445 (D. Mass. 1948), *aff'd,* 177 F.2d 177 (1st Cir. 1949) the court states that the name "Food Fair" lacked originality, and that confusion of customers could be reasonably dissipated by a minor alteration, such as "Rodman's Food Fair" or "Brookline Food Fair."[3]

The more distinctive and unique the name, the greater is the need for protection from dilution of its distinctive and unique quality. *Tiffany & Co. v. L'Argene Prods. Co.,* 67 Misc. 2d 384, 324 N.Y.S.2d 326 (1971). Conversely, the less unique the name the less protection is necessary. "Family Market" possesses considerably less originality than did "Groceteria," the name of a similar type of food operation which was allowed complete injunctive relief in *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 P. 54 (1916). The lack of originality was a factor the trial court could properly consider in determining the scope of the injunction.

Thirdly, the trial court was convinced of defendant's good faith. Plaintiff does not take issue with this finding. Again, in its oral opinion, the trial court stated: "This is not a case where there has been conscious effort to cash in on someone else's advertising program—promotional efforts to pass off the defendant's products as the plaintiff's or in any way to ride on the coattails of the plaintiff."

While defendant's good faith or lack of intent to deceive does not affect whether or not an injunction should be granted (*Foss v. Culbertson,* 17 Wn.2d 610, 136 P.2d 711, 48 A.L.R. 1257 (1943)), the presence of good faith in an equitable proceeding such as this may be considered as bearing

---

[3] *See also* 3 R. Callmann, Unfair Competition, Trademarks & Monopolies, § 82.1(1), 722 (3d ed. 1969).

on the scope of an injunction, so long as the injunction is sufficiently broad to reasonably dissipate the confusion.

Finally, the court could properly consider the minimum nature of the competition of the businesses of plaintiff and defendant in determining the scope of the injunction. Such lack of substantial competition was also mentioned by the trial court in its oral opinion and again in the findings of fact.

In considering the cumulative effect of the above-mentioned factors, we conclude that the trial court was justified in ruling that the narrow injunction was sufficient to protect plaintiff's proprietary interest in its trade name, and to eliminate confusion between the two names.

The second question raised on appeal pertains to the denial of an award of attorney's fees. Plaintiff contends that the appropriation of its trade name constituted an unfair method of competition in violation of RCW 19.86.020,[4] and under this statute he was entitled to bring a civil action, obtain an injunction, and collect reasonable attorney's fees pursuant to RCW 19.86.090.[5]

The trial court refused to enter a finding that defendant's wrongful appropriation constituted unfair competition—largely influenced by the fact that defendant had not acted in bad faith. The question we must decide is whether a finding that plaintiff's trade name was wrongfully appropriated also *requires* a finding that the appropriation constituted unfair competition under RCW 19.86.020. If such a finding is required, RCW 19.86.090 requires an award of attorney fees.

It was stated in *Foss v. Culbertson, supra,* that the basis of an action for the wrongful appropriation of a trade name

---

[4]RCW 19.86.020 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

[5]RCW 19.86.090 provides: "Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, . . ."

is unfair competition. However, in 1961, the State of Washington adopted a Consumer Protection Act (RCW 19.86), that arguably incorporates trade name appropriations.

The Consumer Protection Act draws its basic prohibitions from three federal antitrust acts: the Sherman Act, the Clayton Act, and the Federal Trade Commission Act (FTCA). J. Dewell and D. Gittinger, *Antitrust*, 36 Wash. L. Rev. 239 (1961). A provision of RCW 19.86.920, indicates that the purpose of the act is to complement the federal law and in construing the act, courts are to be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. That provision also states that the act is to be liberally construed.

In noting section (a)(1) of the Federal Trade Commission Act (FTCA), 15 U.S.C.A. § 45 (1963), it will be seen that this statute is very similar to RCW 19.86.020. (*See* footnote 4.)[6] Considering the historical basis of the Washington Consumer Protection Act, it would appear that these two statutes were designed to cover the same types of unfair practices.

Under federal law, the wrongful appropriation of the trade name of another is a deceptive or unfair practice in violation of the FTCA, 15 U.S.C.A. § 45(a) (1963). *Niresk Indus., Inc. v. Federal Trade Comm'n*, 278 F.2d 337 (7th Cir. 1960); *Federal Trade Comm'n v. Colgate-Palmolive Co.*, 380 U.S. 374, 13 L. Ed. 2d 904, 85 S. Ct. 1035 (1965); *Bockenstette v. Federal Trade Comm'n*, 134 F.2d 369 (10th Cir. 1943); *Juvenile Shoe Co. v. Federal Trade Comm'n*, 289 F. 57 (9th Cir. 1923).

Proof of intention to deceive is not a prerequisite to finding a violation under the FTCA. *See Regina Corp. v. Federal Trade Comm'n*, 322 F.2d 765 (3d Cir. 1963). Thus, defendant's good faith is irrelevant in a determination of whether a deceptive or unfair practice exists.

[6]15 U.S.C.A. § 45 (a)(1) provides: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."

Drawing an analogy between the federal law and Washington's Consumer Protection Act, we are compelled to conclude that a finding of a wrongful appropriation of another's trade name also necessitates a finding that an unfair and deceptive practice has occurred in violation of RCW 19.86.020. Consequently, attorney fees should have been awarded to plaintiff, pursuant to RCW 19.86.090.

Although the findings did not incorporate the statement, the trial court noted in its oral opinion that to some extent plaintiff precipitated the trouble by not registering its trade name with the Secretary of State, under RCW 19.77. Plaintiff contends, and we agree, that RCW 19.77, entitled "Trademark Registration," does not provide for registration of trade names.

■ The distinction between a trademark and a trade name was set forth in *Eastern Outfitting Co. v. Manheim*, 59 Wash. 428, 110 P. 23 (1910) which states: "As a general rule a trade-mark has reference to the thing sold, whilst a trade-name embraces both the thing sold and the individuality of the seller." "Family Market" is a trade name that refers to the individuality of the seller or his place of business, rather than to the actual products sold.

A definition of a "trademark" for purposes of registration under RCW 19.77 is contained in RCW 19.77.010 (4):

"Trademark" means any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others, and further includes without limitation a mark, name, symbol, title, designation, slogan, character name, and distinctive feature of radio or other advertising used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others;

It is clear from this provision that a trade name, such as "Family Market," referring to one's actual place or method of business, is not registerable as a trademark under RCW

19.77.[7] This being the case, plaintiff cannot be held to have precipitated trouble by failing to file under that statute.

Finally, plaintiff alleges as error the trial court's failure to adopt a proposed finding of fact: "Members of plaintiff's Family Market stores have come to associate the name Family Market with plaintiff's grocery operations."

█ As noted above, the award of an injunction must be governed by the rules of law set forth in *Holmes v. Border Brokerage Co.*, 51 Wn.2d 746, 321 P.2d 898 (1958). The issuance of the injunction presupposes the existence of necessary facts, one of which is that an assumed name consisting of descriptive words must have acquired a secondary meaning to be considered a trade name. The trial court in its oral opinion noted that "Family Market probably has acquired a secondary meaning, as demonstrated by the membership lists, at least to those who belong to the Shelton store." We fail to see how plaintiff was prejudiced by the failure of the court to enter the proposed finding. *Harringer v. Keenan*, 117 Wash. 311, 201 P. 306 (1921).

Affirmed in part, reversed in part and remanded for a determination of reasonable attorney's fees in accordance with RCW 19.86.090.

Petrie, C.J., and Armstrong, J., concur.

---

[7] For a definition of these terms under federal law, *see* Lanham Trade-Mark Act, 15 U.S.C.A. § 1127 (1963).