**LITTON INDUSTRIAL PRODUCTS, INC., Appellant/Cross-Appellee,**

v.

**SOLID STATE SYSTEMS CORP., Appellee/Cross-Appellant.**

**Appeal Nos. 84–818, 84–858.**

United States Court of Appeals, Federal Circuit.

Feb. 25, 1985.

James L. Magee, Sax & MacIver, Seattle, Wash., and Robert A. Seldon, Beverly Hills, Cal., for appellee/cross-appellant. With them on brief were James P. Donohue, Sax & MacIver, Seattle, Wash., and Jennie M. Crowley, Beverly Hills, Cal.

James R. Uhlir, Christensen, O'Connor, Johnson & Kindness, Seattle, Wash., for appellant/cross-appellee.

Before MARKEY, Chief Judge, MILLER, and NEWMAN, Circuit Judges.

JACK R. MILLER, Circuit Judge.

Litton Industrial Products, Inc. ("Litton") appeals from the decisions[1] of the United States District Court for the Western District of Washington ("district court") that U.S. Patent No. 3,368,280[2] ("'280 patent") is invalid and that Litton violated the Washington Consumer Protection Act, Washington Revised Code § 19.86.020. Solid State Systems Corp. ("Solid State") cross-appeals the district court's decision[3] denying an award of damages and attorney fees for Litton's violation of Washington Revised Code § 19.86.020. We reverse in part, and vacate and remand in part.

## BACKGROUND

The '280 patent, as shown in Figure 2 below, is drawn to an ultrasonic device 11 for cleaning teeth with a vibrating work tool 12. Liquid, such as water, is directed through passages 32 and 34 in housing 14 and bores 46 and 50 of shank 44. From bore 50, the liquid bridges across bent portion 54 to impinge distal end 52. Shank 44 is connected to housing 14 by threaded end 48.

FIG. 2

Claims 1, 2, and 3 are illustrative:

1. A work tool for an ultrasonic dental device comprising a shank portion adapted to be connected to a connecting body in the device and a single portion projecting from the shank and terminating in an angled distal work tool end, said shank having a fluid path therethrough with a mouth arranged to direct a stream of water flowing through the shank to impinge on the distal end.

2. A work tool as set forth in claim 2 [sic, claim 1] wherein the said shank is provided with a first and a second recess, the said first recess comprising a seat to hold the portion and the second recess comprising a through bore to communicate with an axial bore in the shank of the tool, whereby a stream of water is adapted to be directed to the second bore to impinge on the distal end of the tool.

3. A work tool as set forth in claim 2 wherein said angled tool end is formed

1. *Litton Industrial Products, Inc. v. Solid State Systems Corp.*, No. C79–812V (W.D.Wash. June 18, 1983); *Litton Industrial Products, Inc. v. Solid State Systems Corp.*, No. C79–812V (W.D. Wash. March 12, 1980).

2. Issued February 13, 1968, on application No. 536,729 ("'729 application"), filed March 23, 1966, for a "Dental Tool," which was invented by Charles M. Friedman and Bruce Richman and initially assigned to C & B, Inc. ("C & B").

3. *Litton Industrial Products, Inc. v. Solid State Systems Corp.*, No. C79–812V (W.D.Wash. Nov. 22, 1983).

by a dog leg bend intermediate the distal end and its connection to the shank so that the stream of water bridges the dog leg in flight to impinge on the distal end.

Two weeks prior to the filing date of the '729 application,[4] Robert J. Blank and Bruce Richman filed patent application No. 533,362[5] ("Blank application"), which was also assigned to C & B. On July 26, 1967, before any prior art was cited against the claims of the '729 application, Bruce Richman received a letter from his patent attorney, Theodore Bishoff, regarding the Blank application ("Bishoff-Richman letter"). One portion of this letter discussed the pertinence of U.S. Patent No. 3,075,288 to Lewis Balamuth, et al. ("Balamuth '288")[6] to the '729 application as follows:

> It should be clear that Balamuth ['288]'s Figure 9 anticipates the structure of the liquid passage not only in the transformer or work tool support, but his showing of a slot 138 in the work tool also appears to substantially anticipate your joint and 2nd application with Dr. Charles Friedman [the '729 application].

Despite this letter, Balamuth '288 was not cited to the U.S. Patent and Trademark Office ("PTO") during prosecution of the '729 application.

As shown below, Figure 9 of Balamuth '288 depicts internal passages in ultrasonic dental tool 6 for supplying water to tool 30. By pressing button 136, collar 132 moves against the bias of spring 134 to lift valve plug 130 away from its normally closed position so that water within the tool flows through passages 128 and 127. Slot 138 permits water to leak from passage 127 to tool 30.

In issuing the '280 patent, the PTO did, however, consider, *inter alia*, U.S. Patent No. 2,874,470 to James R. Richards ("Richards patent")[7] and U.S. Patent No. 2,792,674 to Lewis Balamuth, et al. ("Balamuth '674").[8]

Richards, as shown below in Figure 1, discloses a dental tool 10, which oscillates at high frequency for drilling teeth and filling cavities. Work end wall 31 of tool 10 is provided with a hole 32 through which water from the interior 28 flows to the working area 33 of a tooth. As an alternative to the straight work tip 34 in Figure 1, Richards also suggests angled work tips.

---

**4.** *See* note 2 *supra.*

**5.** Filed March 10, 1966, and issued April 2, 1968, as U.S. Patent No. 3,375,583, for an "Ultrasonic Dental Tool."

**6.** Issued January 29, 1963, on application No. 477,530, filed on December 24, 1954, for a "Dental Instrument."

**7.** Issued February 24, 1959, on application No. 433,310, filed May 28, 1954, for a "High Frequency Dental Tool."

**8.** Issued May 21, 1957, on application No. 417,407, filed on March 19, 1954, for a "Vibratory Machine Tool."

FIG. 1

Balamuth '674 discloses an ultrasonic machine tool, as shown in Figure 1 below, for cutting, grinding, or boring. The tool comprises a mechanical vibration generator 2, a tool holder 6, and a tool 8. Flange 7 of tool holder 6 has a transverse passage 46, which communicates with longitudinal passages 48, to deliver water to work area 50 via grooves 44.

FIG. 1.

On September 23, 1970, Litton purchased all the stock and assets of C & B including the '280 patent. In 1974, Litton brought

actions against Sybron Corporation ("Sybron")[9] and against Johnson & Johnson, Inc. and Key Pharmaceuticals, Inc. ("Johnson & Johnson")[10] for infringement of the '280 patent. In the former action, Sybron sought to invalidate the '280 patent for failure to disclose Balamuth '288 to the PTO. In the latter action, when Johnson & Johnson requested the production of documents, including the Bishoff-Richman letter, Litton's outside counsel read the letter to determine whether it was privileged.

On November 6, 1973, Litton sent Solid State a notice of infringement and a copy of the '280 patent. In June, 1979, Litton brought suit against Solid State for infringement of the '280 patent. In answering Litton's complaint, Solid State denied infringement and raised, *inter alia*, the following affirmative defenses with respect to the claims of the '280 patent: invalidity under 35 U.S.C. §§ 102 and 103 and unenforceability for fraudulently withholding Balamuth '288 from the PTO. In addition, Solid State counterclaimed for a declaratory judgment that the '280 patent was invalid, unenforceable, and not infringed. An injunction, damages, costs, and attorney fees were sought by Solid State.

On October 25, 1979, Solid State moved for summary judgment on the grounds that the '280 patent was invalid under 35 U.S.C. §§ 102 and 103. The district court denied the motion under 35 U.S.C. § 102, because it found that the requirements for anticipation were not met. The motion under 35 U.S.C. § 103 was, however, granted with respect to claims 1–4 of the '280 patent, the

9. *Litton Medical Products, Inc. v. Sybron Corp.,* No. Civ–74–99 (W.D.N.Y., filed Feb. 28, 1974).

10. *Litton Medical Products, Inc. v. Johnson & Johnson, Inc.,* No. 74–1406–CIV–CA. (S.D.Fla., filed Oct. 31, 1974).

court finding that there was no genuine issue with respect to the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In analyzing the question of obviousness, the court stated that the "most critical feature of [Litton's] device is the internal fluid path" and that Richards, Balamuth '288, and two articles discussing the work of Doctors Ewen and Sorrin ("Ewen and Sorrin articles")[11] were the most relevant references, because they taught this concept. The Ewen and Sorrin articles were held to teach directing a fluid stream to impinge on the end of a work tool. As to the references' failure to show a shank with an internal water passage and a fluid path for directing a stream of water across a dog leg to impinge an angled distal end of the work tool, these claimed features were deemed "distinction[s] without a difference." The district court, citing *Walker v. General Motors Corp.*, 362 F.2d 56, 149 USPQ 472 (9th Cir.1966), refused to consider secondary considerations, concluding that obviousness was clear.

Litton filed a notice of appeal with the United States Court of Appeals for the Ninth Circuit, but later withdrew it.

On May 25, 1982, Solid State filed an amended answer and counterclaim, which added counterclaims alleging that Litton engaged in unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and Washington Revised Code § 19.86.020.[12] The unfair competition counterclaims were based on Solid State's allegation that Litton refused to sell the invention of the '280 patent and that Litton threatened to file and did file infringement suits, all with knowledge that the '280 patent was obtained by inequitably failing to disclose Balamuth '288 to the PTO.

The Lanham Act claim was dismissed on summary judgment, but, after a trial on the claim under Washington Revised Code § 19.86.020, the district court issued a memorandum decision holding Litton liable. Based on the Bishoff-Richman letter, it held that the examiner would have considered Balamuth '288 important in deciding whether to allow the '729 application, and that the '280 patent would not have issued had Balamuth '288 been disclosed. Accordingly, the failure to call Balamuth '288 to the examiner's attention was held to constitute fraud[13] on the PTO, which Litton became aware of during the infringement actions against Sybron and Johnson & Johnson. In view of Litton's refusal to sell the claimed invention, its threats to enforce the '280 patent, and its commencement of suit against Solid State, all with the knowledge that the '280 patent was obtained by inequitable conduct, the district court held that Litton engaged in unfair competition under Washington Revised Code § 19.86.020.

In a separate memorandum opinion on damages, the district court concluded that Solid State's alleged loss of sales to Internat Services, Pelton & Crane Co., and S.S. White Dental Products Company were not due to Litton's violation of Washington Revised Code § 19.86.020. Solid State was, however, awarded $7,000 (plus interest) in costs and attorney fees incurred while defending against Litton's patent infringement action.

Litton and Solid State filed notices of appeal and cross-appeal, respectively. Subsequently, Solid State moved to dismiss Litton's appeal from the district court's order granting summary judgment and holding claims 1–4 of the '280 patent invalid, because Litton did not appeal within 30 days of that order. Fed.R.App.P. 4. The

---

**11.** The Ewen and Sorrin articles teach an ultrasonic scaler comprising a hypodermic needle soldered to a magnetostricter base, wherein water flows through the hypodermic needle.

**12.** Washington Revised Code § 19.86.020 provides:

*Unfair Competition, practices, declared unlawful.* Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**13.** Hereinafter the term "inequitable conduct" will be used instead of "fraud." *See J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir.1984).

motion was denied in an unpublished order, dated March 13, 1984, because the district court's order was not a final judgment and, therefore, was subject to revision at any time prior to such judgment.

## ANALYSIS

1. *Summary Judgment on Obviousness*

■ It is well settled that obviousness is a question of law based on the following factual determinations: (1) Scope and content of the prior art; (2) The differences between the prior art and the claimed invention; (3) The level of ordinary skill in the pertinent art; and (4) Other ("secondary") considerations, which may serve as indicia of unobviousness. *Graham v. John Deere Co.*, 383 U.S. at 17–18, 86 S.Ct. at 693–694; *Environmental Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 695, 218 USPQ 865, 867 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

■ Although patent infringement suits often involve numerous complex factual issues, trial courts may decide an obviousness question by summary judgment under Federal Rule of Civil Procedure 56 where there is no dispute over the underlying factual determinations. *Chore-Time Equipment, Inc. v. Cumberland*, 713 F.2d 774, 778–79, 218 USPQ 673, 675 (Fed.Cir. 1983). In deciding whether summary judgment is appropriate, the trial judge should look beyond mere denials or arguments with respect to the factual determinations underlying an obviousness question and resolve all doubt over factual issues in favor of the party opposing summary judgment. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571, 220 USPQ 584, 588 (Fed.Cir.1984). However, we are satisfied with the district court's finding in this case that there are no factual issues in genuine dispute.

Litton attempts to raise issues of fact with respect to the scope and content of the prior art by referring to the testimony of Litton's former project engineer for dental scalers, Dale O. Cranston ("Cranston"), at the unfair competition trial. Such testimony, coming after the motion for summary judgment was granted, cannot retroactively raise an issue of material fact. In attempting to overturn the district court's decision on summary judgment, Litton must point to an evidentiary conflict created on the record at least by a counterstatement of fact in its opposition to the motion for summary judgment. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984). Although Cranston also executed an affidavit, which accompanied Litton's opposition to the motion for summary judgment, that affidavit raised no *genuine* issues of material fact with respect to the scope and content of the prior art. Solid State has, of course, consistently urged that there were no disputed issues of fact with respect to the scope and content of the prior art. Furthermore, it is apparent from the district court's opinion that the court agreed with Cranston's analysis of the prior art. Accordingly, we conclude that there is no dispute in the record over the scope and content of the prior art.

Further, there is no dispute with respect to the differences between the prior art and the claimed invention. Although Litton cites various deficiencies in the teachings of Richards, Balamuth '288, and the Ewen and Sorrin articles, these shortcomings were noted by the district court and, of course, not disputed by Solid State. It appears that Litton's problem with the district court's decision on differences between the prior art and the claimed invention goes only to the ultimate question of obviousness. This being a question of law, a dispute on its ultimate resolution cannot raise a genuine issue of fact needed to prevent summary judgment.

■ Litton also faults the trial court for not making a specific finding on the level of ordinary skill in the art, relying instead on the level of skill of a common layman as the standard most favorable to Litton. A specific finding on the level of skill in the art is not, however, required where the prior art itself reflects an appropriate level

and a need for testimony is not shown. *Chore-Time Equipment, Inc.*, 713 F.2d at 779 n. 2, 218 USPQ at 676 n. 2. Furthermore, although Solid State's motion for summary judgment urged using the common layman standard, while Litton's opposition alleged a higher level of skill (based on allegations in an accompanying deposition by Anton Banko ("Banko deposition") that the common layman would not appreciate various problems in the art), mere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment. *See id.* at 779, 218 USPQ at 676.

As to other considerations, Litton's opposition to the motion for summary judgment stated that it would be urged at trial that the invention claimed in the '280 patent had been a commercial success; however, such conclusory statements are not alone sufficient to raise a genuine issue of fact. *Barmag Barmer Maschinenfabrik*, 731 F.2d at 836, 221 USPQ at 564.

Although technically the district court's decision on summary judgment was correct because of Litton's failure to raise any factual issue, it must be overturned if the court engaged in a faulty analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result. *Union Carbide Corp.*, 724 F.2d at 1573, 220 USPQ at 589. Here, Litton contends that when the district court failed to look at the claimed invention as a whole, it engaged in a faulty legal analysis; further, that if the district court properly applied the law to the facts in the record, a conclusion of obviousness would not have resulted. We agree.

 It is elementary that the claimed invention must be considered as a *whole* in deciding the question of obviousness. *E.g., Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1537, 218 USPQ 871, 877 (Fed. Cir.1983). The district court did not, however, follow this rule, but instead focused on the claimed invention's internal fluid path, which it thought was the "most critical feature." In addition, various differences between the claims and prior art, such as a shank with an internal water passage (claim 1) or means to direct a fluid stream across a dog leg in the tool to impinge on its distal end (claim 3), were dismissed as "distinction[s] without a difference." Furthermore, contrary to the district court's decision, the Ewen and Sorrin articles do not teach devices designed to cause impingement, because the passage of fluid through a hypodermic needle does not cause fluid to strike or sharply collide with the end of the needle. *See Webster's Third New International Dictionary* 1134 (1971). The references fail not only to expressly disclose the claimed invention as a whole, but also to suggest to one of ordinary skill in the art modifications needed to meet all the claim limitations. *See Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 739, 220 USPQ 845, 848–49 (Fed.Cir. 1984).

In view of the district court's failure to consider the claimed invention as a whole, we vacate its holding of invalidity and award of attorney fees and costs incurred by Solid State in defending against Litton's infringement action, and remand for further proceedings.

We recognize that, in some cases, it may be proper for an appellate court which disagrees with a district court's decision granting summary judgment in favor of the moving party, to reverse and remand with instructions to award summary judgment in favor of the nonmoving party. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* § 56.12 (2d ed. 1984); 6 Part 2 J. Moore & J. Wicker, *Moore's Federal Practice* § 56.27[1] (2d ed. 1984). However, we believe it is more appropriate in this case to vacate the district court's decision and remand for further proceedings, because it is not clear that all facts bearing on obviousness are before us.[14] *Id.*

---

**14.** For example, evidence from expert witnesses for Solid State might establish that the differences between the claimed invention and the references were known to those skilled in the art. Such additional evidence could affect the conclusion of nonobviousness.

On remand, the district court should determine whether Solid State has established that the claimed invention as a whole would have been obvious to one of ordinary skill in the art rather than to the judge or to the common layman. *Environmental Designs, Ltd.,* 713 F.2d at 697, 218 USPQ at 868–69. In addition, evidence of other considerations presented on remand must be weighed in deciding the question of obviousness. *Simmons Fastener Corp. v. Illinois Tool Works, Inc.,* 739 F.2d 1573, 222 USPQ 744 (Fed.Cir.1984) and cases cited therein.

### 2. *Unfair Competition under Washington Revised Code § 19.86.020*

As noted earlier, Solid State's unfair competition claim is based entirely on the allegation that Litton asserted the '280 patent knowing that it was procured by inequitably failing to disclose Balamuth '288 to the PTO. Accordingly, if the failure to disclose Balamuth '288 was not inequitable conduct, Solid State's claim under Washington Revised Code § 19.86.020 cannot succeed.

Having arisen under Washington State law, Solid State's unfair competition claim must be decided by looking to the law of that state as declared by its legislature in a statute or by its highest court in a decision.[15] *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). If there is no decision by the state's highest court, proper regard should be given relevant rulings of other courts of that state. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Where, as in this case, there is no decision by the Supreme Court of Washington or by any other court of that state on the applicability of Washington Revised Code § 19.86.020 to nondisclosure before the PTO,[16] we must

decide whether the district court properly predicted the applicable Washington law. *See id.;* C. Wright, *Law of Federal Courts* § 58 (3d ed. 1976).

We are not, however, completely without guidance in deciding how the Supreme Court of Washington would rule, because the Washington Consumer Protection Act, Washington Revised Code § 19.86.920, provides:

> *Purpose — Interpretation — Liberal construction—Saving.* The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.
>
> It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest.

This Act has been judicially recognized as indicating to state courts that they should be guided by the interpretation federal courts give to corresponding federal statutes. *State v. Black,* 100 Wash.2d 793, 676

---

**15.** Under *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), we would also normally determine whether the district court properly applied the conflicts-of-law principles of Washington, where it was sitting; however, such review is unnecessary where, as here, the parties apparently agree that

Washington law is the only relevant dispositive state law.

**16.** There has also been no decision by the Ninth Circuit Court of Appeals which would have bound the district court.

P.2d 963 (1984) (in banc). The Washington Consumer Protection Act being, in essence, an antitrust law, we are confident that the Supreme Court of Washington would look to how the Sherman, Clayton, and Federal Trade Commission Acts are applied. See Tradewell Stores, Inc. v. T.B. & M., Inc., 7 Wash.App. 424, 500 P.2d 1290 (Ct.App.1972).

As to cases involving the alleged maintenance and enforcement of a patent obtained by inequitable conduct before the PTO, the relevant starting point in federal law is Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 179, 86 S.Ct. 347, 351, 15 L.Ed.2d 247 (1965) (Harlan, J., concurring), where it was held that such acts were violative of Section 2 of the Sherman Act, provided—

(1) the relevant patent is shown to have been procured by knowing and willful [inequitable conduct] practiced by the defendant on the Patent Office or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the [inequitable conduct] in which it was obtained; and

(2) all the elements otherwise necessary to establish a § 2 [of the Sherman Act] monopolization charge are proved.

Where the above conditions are proven, treble damages under Section 4 of the Clayton Act are recoverable from the patentee or an assignee who maintains and enforces the patent, knowing of its infirmity. Id.

■ The State of Washington being located within the Ninth Circuit, the Supreme Court of Washington would be guided by that circuit's pronouncements on Walker Process in order to "complement" federal law, as suggested by Washington Revised Code § 19.86.920. Under Ninth Circuit case law, establishing that a patent was procured by knowing and willful inequitable conduct before the PTO for Walker Process claims requires a showing of materiality and intent by clear and convincing evidence.[17] Cataphote Corp. v. DeSoto Chemical Coatings, Inc., 450 F.2d 769, 171 USPQ 736 (9th Cir.1971), cert. denied, 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972); Ampex Corp. v. Memorex Corp., 205 USPQ 794 (N.D.Calif.1980). Wholly inadvertent errors or honest mistakes, which are caused by neither fraudulent intent nor by the patentee's gross negligence, do not constitute the requisite level of intent.[18] Cataphote Corp., 450 F.2d at 772, 171 USPQ at 738. Materiality is shown if "but for" the misrepresentation, the patent would not have issued.[19] Id. at 773, 171 USPQ at 739.

■ Although the district court made no express finding on the intent underlying

---

**17.** The Federal Circuit likewise requires examination of materiality and intent in deciding whether a patent should be held unenforceable for inequitable conduct. E.g., Driscoll v. Cebalo, 731 F.2d 878, 221 USPQ 745 (Fed.Cir.1984); American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.), cert. denied, — U.S. —, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

**18.** This level of intent for Walker Process actions, where inequitable conduct before the PTO is used offensively for recovering damages, apparently corresponds to the level of intent required under Federal Circuit case law for asserting inequitable conduct defensively to render a patent unenforceable. J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d at 1560, 223 USPQ at 1092; Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1538–40, 222 USPQ 553, 560–61 (Fed.Cir.1984).

**19.** To establish the threshold level of materiality for the defensive purpose of rendering a patent unenforceable, the Federal Circuit permits using four tests: (1) objective "but for"; (2) subjective "but for"; (3) "but it may have been"; (4) PTO Rule 1.56(a), i.e., whether there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent. J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d at 1559, 223 USPQ at 1092; American Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d at 1362, 220 USPQ at 772–73. Although the Federal Circuit's endorsement of the PTO standard would appear to permit a holding of unenforceability based on the failure to disclose information which is less material than that needed to meet the Ninth Circuit's materiality requirements for Walker Process claims, the offensive use of such conduct before the PTO generally requires a higher level of materiality than that required for defensive purposes. 4 Chisum, Patents § 19.03[6][e] (1984); see also J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d at 1560 n. 7, 223 USPQ at 1093 n. 7.

Bruce Richman's failure to cite Balamuth '288 to the PTO when he received the Bishoff-Richman letter, we need not be concerned with the question of intent, because the district court's finding of materiality was clearly erroneous. Both Balamuth '674, which was cited by the examiner, and Balamuth '288 disclose ultrasonic tools having internal fluid passages through which liquid flows onto the exterior of the tool's working tip. While the precise structural arrangements of the devices disclosed by these references differ, they have the same relative degree of materiality with respect to the claimed invention. Given the cumulative nature of Balamuth '288 compared to Balamuth '674, Bruce Richman's failure to disclose Balamuth '288 to the PTO, despite the Bishoff-Richman letter, does not reach the threshold level of materiality under PTO Rule 1.56(a), let alone the "but for" standard required by the Ninth Circuit for *Walker Process* claims. *See J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d at 1559–60, 223 USPQ at 1092; *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1455–56, 223 USPQ 603, 615–16 (Fed.Cir.1984).

Due to its similarity to Washington Revised Code § 19.86.020, Section 5 of the Federal Trade Commission Act may alternatively be considered. *See Tradewell Stores, Inc. v. T.B. & M., Inc.* We recognize that Section 5 of the Federal Trade Commission Act has been held applicable to actions that do not violate the Sherman and Clayton Acts. *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 239, 92 S.Ct. 898, 903, 31 L.Ed.2d 170 (1972); *F.T.C. v. Brown Shoe Co.*, 384 U.S. 316, 320–21, 86 S.Ct. 1501, 1503–04, 16 L.Ed.2d 587 (1966). Nevertheless, our review of *Charles Pfizer & Co. v. F.T.C.*, 401 F.2d 574, 159 USPQ 193 (6th Cir.1968), *cert. denied*, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969), and its ancestors indicates that Section 5 claims involving inequitable conduct in patent procurement, like Ninth Circuit *Walker Process* claims, require a showing of materiality which meets the "but for" standard. Due to the absence of any Ninth Circuit

decisions on the applicability of Section 5 to claims involving inequitable conduct before the PTO, we are satisfied that the Supreme Court of Washington would be guided by the "but for" standard of the *Pfizer* case. Accordingly, we hold that the nondisclosure of Balamuth '288 was not material for purposes of the Federal Trade Commission Act.

In view of the lack of materiality, the district court erred in holding that there was inequitable conduct, and, therefore, its conclusion that Litton is liable for unfair competition under Washington Revised Code § 19.86.020 must be reversed.[20]

## SUMMARY

The district court's decision that the '280 patent is invalid and that Solid State is entitled to attorney fees and costs is *vacated* and that part of the case is *remanded* for further proceedings consistent with this opinion. Its decision that Litton violated Washington Revised Code § 19.86.020 is *reversed*.

Each party will bear its own costs.

**REVERSED IN PART AND VACATED AND REMANDED IN PART.**

---

20. In view of Litton's nonliability, we need not consider Solid State's cross-appeal on the dis-

trict court's failure to award damages and attorney fees based on its unfair competition claim.