**Brenda Shelton HAYNES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–575–C.

United States Court of Federal Claims.

Aug. 31, 2004.

*OPINION AND ORDER*

HEWITT, Judge.

Plaintiff, Brenda Shelton Haynes, appearing pro se, claims that she is entitled to damages resulting from the federal government's breach of a mortgage contract. Complaint ¶ 2. The court has before it Defendant's Motion for Summary Judgment (Def.'s Mot.) on the issue of damages. For the following reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to ENTER JUDGMENT for defendant.

I. Background [1]

James F. Freeman, plaintiff's father, and Henry Davis (collectively referred to as "borrowers") entered into a twenty-year mortgage securing a promissory note in the original principal amount of $39,000 with the United States Department of Housing and Urban Development (HUD) on October 3, 1979. Defendant's Proposed Findings of Uncontroverted Facts (Def.'s PFUF) ¶ 1; Plaintiff's Opposition to Defendant's (United States) Proposed Findings of Uncontroverted Facts (Pl.'s PFUF) ¶ 1. The mortgage covered a piece of property located in Buffalo, New York. Def.'s PFUF ¶ 1; Pl.'s PFUF ¶ 1.

The mortgage required the borrowers to make monthly payments of principal and interest as well as monthly deposits in an amount equal to "ground rents, premiums, taxes, assessments, water rates, and other governmental charges." Def.'s Mot. Ex. E at 57 (Mortgage ¶ 7(a)). The deposits were to be held in escrow by HUD and used to cover only those expenses. *Id.* The mortgage further provided that any funds excess to these purposes "shall be credited to subsequent respective monthly amounts of the same nature required to be paid thereunder." *Id.* at 58 (Mortgage ¶ 7(c)). Instead of following the terms of the mortgage agreement, defendant transferred $10,000 to an unapplied account on April 6, 1989, *see* Def.'s Mot. Ex. A at 9 (Payment Analysis Schedule

Brenda Shelton Haynes, Buffalo, NY, pro se.

Kelly B. Weiss, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Nicole K. Chappell, United States Department of Housing and Urban Development, Washington, DC, of counsel.

1. For additional background information, *see Haynes v. United States,* 51 Fed.Cl. 754, 760–61 (2002) (denying defendant's motion for summary judgment and holding that defendant breached the mortgage contract).

Spreadsheet), and then "utilized the balance in the unapplied account to make monthly payments under the loan until the unapplied account was depleted," *Haynes v. United States,* 51 Fed.Cl. 754, 757 (2002).

"Mr. Freeman died on December 5, 1985, and plaintiff inherited an interest in the property." *Id.* at 755. Monthly payments became irregular after Mr. Freeman's death. *Id.; see also* Def.'s Mot. Ex. A at 4–21 (Payment Analysis Schedule Spreadsheet). No mortgage payments were made after July 1992. *Id.* at 19–21. HUD attempted to foreclose on the property, but was unsuccessful. Def.'s PFUF ¶¶ 7–8; Pl.'s PFUF ¶¶ 7–8. The City of Buffalo subsequently sold the property. Def.'s PFUF ¶ 8; Pl.'s PFUF ¶ 8.

In this court's prior opinion in this case, the court found that defendant breached the mortgage agreement by transferring escrow funds to an unapplied account and using those funds for monthly payments. *Haynes,* 51 Fed.Cl. at 760. The court also stated that it could "discern no violation of the terms of the Mortgage or the Note in connection with the procedures used by defendant during the foreclosure sale." *Id.* at 761. The only issue remaining in this case is whether defendant's breach of the mortgage agreement requires the payment of money damages to plaintiff. *Id.* at 762.

## II. Discussion

### A. Standard of Review

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run, *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

The pleadings of pro se plaintiffs are liberally construed. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) ("It is settled law that the allegations of [a pro se] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers ....'" (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))); *Pentagen Techs. Int'l Ltd. v. United States,* 175 F.3d 1003, 1005 (Fed.Cir.1999) (stating that courts should interpret pro se complaints "liberally" and "excuse errors" reflecting the "pro se litigants' unfamiliarity with legal requirements"); *Roche v. United States Postal Serv.,* 828 F.2d 1555, 1558 (Fed. Cir.1987) ("Pro se petitioners are not expected to frame issues with the precision of a common law pleading."). However, the court "will not supply additional facts, [or] ... construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir.1989).

### B. Proof of a Damages Claim

■ In a breach of contract case, the plaintiff bears the burden of proving that injury occurred as a result of the breach. *See Malissa Co. v. United States,* 18 Cl.Ct. 672, 674 (1989) ("'This court has long held

that in contract cases, where plaintiff has alleged a breach of contract, the plaintiff must shoulder the burden of "establishing the fundamental facts of liability, causation, and resultant injury." ' " (quoting *G & H Mach. Co. v. United States*, 16 Cl.Ct. 568, 571 (1989) (quoting *Wunderlich Contracting Co. v. United States*, 173 Ct.Cl. 180, 351 F.2d 956, 968 (1965)))). The plaintiff must show that a loss was the natural and proximate cause of the breach. *See Willems Indus., Inc. v. United States*, 155 Ct.Cl. 360, 295 F.2d 822, 831 (1961) ("[T]he measure of damages to be applied in the particular case is irrelevant until the claimant has established the fact of losses that were the natural and proximate result of the breach of contract."). "Absent tangible proof of damages, [a party] may not recover for an alleged injury." *Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 667 (Fed.Cir.1992).

Defendant argues that plaintiff "has not produced any evidence in support of her damages claim." Def.'s Mot. at 5. Defendant further argues that the expert report defendant filed with the court demonstrates that plaintiff is not owed damages. *Id.* With respect to plaintiff's expert report, defendant contends that the report "merely questions the methodology employed by [defendant's expert]" and does not support plaintiff's "affirmative obligation to prove the amount of damages." *Id.* at 6.

In response to defendant's motion, Ms. Haynes asserts that there are three issues of material fact in dispute. Response to Movant's Contentions That There Are No Genuine Issues with Respect to Listed Material Facts [RCFC 56(d) ] (Pl.'s Resp.) at 1–3. The first is whether defendant or the City of Buffalo had the legal right to foreclose on the property. *Id.* ¶ A. Plaintiff asserts that, because neither the federal government nor the City of Buffalo held the first lien on the property, both defendant and the City of Buffalo were barred from bringing a foreclosure action. *Id.* ¶¶ 6–7. The second disputed issue of material fact that plaintiff asserts is whether the overpayments collected by HUD constituted wrongdoing because no foreclosure ever existed against plaintiff. *Id.* ¶ B. Plaintiff argues that, because defendant

did not have the right to foreclose on the property, HUD's solicitation of payments from plaintiff to prevent foreclosure was "fraudulent wrongdoing." *Id.* ¶ 11. The third disputed issue of material fact asserted by plaintiff is based on the disagreement between defendant's expert and plaintiff's expert. *Id.* ¶ 12. In this connection, plaintiff argues that an examination of the payment analysis schedule spreadsheet reveals that "a proper application of [the escrow] funds would have avoided any possibility of a foreclosure situation." *Id.* ¶ 13.

In response to plaintiff's assertion that disputed issues of material fact exist, defendant argues that "none of [plaintiff's] arguments establish a genuine issue of material fact regarding the amount of damages in this case." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Def.'s Reply) at 1–2. Defendant argues that "[a]ccording to the express terms of the mortgage agreement ... defendant possessed the right to foreclose upon the property in the event of default by the mortgagors" and that "[t]he existence of a senior mortgage upon the property ... does not render a foreclosure by the second mortgagee illegal." *Id.* at 2. Defendant also argues that the only issue before the court is whether plaintiff has proven damages and that plaintiff's "unsupported allegations of 'fraudulent wrongdoings' do not provide a basis upon which to ascertain an amount of damages." *Id.* at 3 (citation omitted).

With respect to the issues plaintiff raises, defendant is correct that defendant could legally foreclose on the property. The mortgage clearly states that defendant may foreclose on the property in the event of default. *See* Def.'s Mot. Ex. E at 60 (Mortgage ¶ 13). The payment analysis schedule spreadsheet demonstrates that the last payment on the mortgage was made in July 1992 and that, at that time, the principal balance was $16,285.50. *Id.* Ex. A at 19. The mortgage provides that after default, the "Mortgagor shall, upon demand of the Mortgagee, surrender possession of the mortgaged property to the Mortgagee." *Id.* Ex. E at 60 (Mortgage ¶ 13(a)). Further, even if a senior mortgage existed on the property, and defen-

dant's mortgage was junior to that mortgage, when more than one mortgage exists on a property, every mortgagee with the right to foreclose may do so. *See* Restatement (Third) of Property § 7.1 illus. 1, 5 (1997) (illustrating that where two mortgages on a property exist, both the senior and the junior mortgagee may foreclose). The facts of this case demonstrate, however, that defendant unsuccessfully attempted to foreclose on the property. Def.'s Mot. Ex. E at 70 ("HUD has determined that no additional efforts will be exerted to [sell] the property and/or pay delinquent taxes on behalf of the owners." Letter from HUD to City of Buffalo of 1/14/98). The City of Buffalo foreclosed on the property. Def.'s PFUF ¶ 8; Pl.'s PFUF ¶ 8; *see also* Def.'s Mot. Ex. E at 65–67 (Notice of Foreclosure of Tax Liens by the City of Buffalo). This court does not have jurisdiction to render a decision regarding whether a city with a tax lien on a property properly instituted and carried out foreclosure proceedings. *See* 28 U.S.C. § 1491(a)(1) (2000) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ...."). Because it is clear that defendant had the right to foreclose on the property, although it did not, plaintiff's argument that HUD's solicitation of payments from plaintiff to prevent foreclosure was "fraudulent wrongdoing," Pl.'s Resp. ¶ 11, is without merit. Accordingly, the first two issues of material fact that plaintiff contends are in dispute are not, in fact, in dispute.

The court now turns to the question of whether plaintiff has met her burden of demonstrating that she was injured as a result of defendant's breach of the mortgage agreement. The specific provision of the mortgage that defendant breached required the money in the escrow account to be "held by the Mortgagee, or any agent designated by it, in trust to be used only for the payment of such ground rents, premiums, taxes, assessments, water rates, and other governmental charges." Def.'s Mot. Ex. E at 57 (Mortgage ¶ 7(a)). The mortgage further provided that any funds excess to these purposes "shall be credited to subsequent respective monthly amounts of the same nature required to be paid thereunder." *Id.* Ex. E at 58 (Mortgage

¶ 7(c)). Instead of following the terms of the mortgage agreement, defendant transferred $10,000 to an unapplied account on April 6, 1989, *see id.* Ex. A at 9 (Payment Analysis Schedule Spreadsheet), and then "utilized the balance in the unapplied account to make monthly payments under the loan until the unapplied account was depleted," *Haynes*, 51 Fed.Cl. at 757. If defendant had complied with the terms of the mortgage agreement, defendant would have used the funds in the escrow account only to pay for monthly ground rents, premiums, taxes, assessments, water rates and other governmental charges. *See* Def.'s Mot. Ex. E at 57–58 (Mortgage ¶¶ 7(a), (c)). If excess funds remained in the escrow account when the property was sold under foreclosure, the mortgage provided that "any remaining balance of the accumulations ... shall be credited to the principal amount owing on the Note as of the date of commencement of foreclosure proceedings for the mortgaged property." *Id.* Ex. A at 58 (Mortgage ¶ 7(c)). There is no provision in the mortgage for returning excess escrow funds to the mortgagor.

Although Ms. Haynes argues that an examination of the payment analysis schedule spreadsheet reveals that "a proper application of [the escrow] funds would have avoided any possibility of a foreclosure situation," Pl.'s Resp. ¶ 13, she has produced no evidence to support this assertion. The expert report plaintiff filed with the court consists of a loan amortization schedule that assumes that all monthly payments due under the mortgage loan were made in the proper amount and in a timely manner. *See* Def.'s Mot. Ex. C at 33–36 (Plaintiff's Expert Report). However, the payment analysis schedule spreadsheet demonstrates that the assumptions plaintiff's expert makes do not match what actually occurred with respect to the timeliness and amount of monthly payments. *Id.* Ex. A (Payment Analysis Schedule Spreadsheet). Plaintiff does not dispute the accuracy of the payment analysis schedule spreadsheet. *See* Pl.'s Resp. ¶ 13 (relying on the payment analysis schedule spreadsheet to argue that the examination of the spreadsheet reveals that a proper application of funds would have avoided the possibility of

foreclosure). In fact, after Mr. Freeman died in December 1985, Def.'s PFUF ¶ 3; Pl.'s PFUF ¶ 3, payments were sporadic, with the last payment occurring in July 1992, *see* Def.'s Mot. Ex. A at 4–21 (Payment Analysis Schedule Spreadsheet).

Defendant's expert report demonstrates that, even under a treatment of the mortgage more favorable than that provided for in the mortgage agreement, plaintiff would not be entitled to damages. Defendant's expert, at the point when the escrow balance was the highest, "credit[ed] the entire escrow amount ($17,093) to the loan principal balance and proceed[ed] with the subsequent payment applications as originally recorded on the records." Def.'s Mot. Ex. B at 23. Defendant's expert concluded that, under this treatment of the escrow balance, "[a]t no point . . . are there funds credited to the account or available within the account to liquidate all amounts due on the mortgage note." *Id.*

Defendant's expert also performed an alternative calculation, starting at the time when large amounts began to accumulate in the escrow account. *Id.* at 24. Defendant's expert used a capitalization process in this alternative calculation:

> This process assumes there is no escrow account maintained, but when disbursements are required for payment of property taxes or insurance premiums, those amounts are added to or "capitalized" into the loan principal balance. Interest is accrued on the outstanding principal balance based on the Daily Simple Interest method, i.e., for each transaction that affects the principal balance interest is accrued from the date of the last such transaction to the current date. As payment amounts are received, funds are credited first to satisfy all accrued interest and the remaining amounts are applied to reduce loan principal.

*Id.* After performing this analysis, defendant's expert concluded, again, that "[a]t no point in this schedule are there funds credited to the account or available within the account to liquidate all amounts due on the mortgage note." *Id.*

Plaintiff's expert had an opportunity to examine defendant's expert report. Plaintiff's expert did not provide any alternative calculations or make any specific criticisms of defendant's expert report. Plaintiff's expert merely offered comments of a hypothetical and speculative nature. Plaintiff's expert speculated that "[t]he conclusions reached by [defendant's expert] may not be correct by not including data before 4/12/88 and after 4/7/93." Def.'s Mot. Ex. C at 32. Plaintiff's expert also suggested that defendant's expert's "methodology of applying all of the escrow balance to principal balance at [the] beginning of Schedule 1 can influence the users' conclusions about the loan balance as of 04/7/93 and alleged arrears." *Id.* Plaintiff argues that the experts "do not agree as to whether an application of the escrow accounts at their alleged highest point would have created or avoided a foreclosure situation, [which] is . . . a factual issue in dispute." Pl.'s Resp. ¶ 12. The court agrees with defendant that plaintiff's expert's statements do not create a genuine issue of material fact, plaintiff's expert "simply makes an observation regarding [defendant's expert's] methodology." Def.'s Reply at 3. Even if the court were to ignore defendant's expert report and accept plaintiff's expert report, plaintiff still would have failed to present tangible proof of damages resulting from defendant's breach of the mortgage agreement. *See Roseburg Lumber Co.*, 978 F.2d at 667 ("Absent tangible proof of damages, [a party] may not recover for an alleged injury.").

### III. Conclusion

Because Ms. Haynes has failed to present evidence to the court that demonstrates that she suffered a loss that was a natural and proximate cause of the breach, *see Willems Indus.*, 295 F.2d at 831 (stating that a plaintiff must "establish[ ] the fact of losses that were the natural and proximate result of the breach of contract"), and because this is an element of her case on which she bears the burden of proof, the court must grant summary judgment in favor of defendant, *see Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (stating that "a complete failure of proof concerning an essential element of the nonmoving party's case" entitles the moving party to judgment as a matter of law). Defendant's

motion for summary judgment is GRANT-ED. The Clerk of Court is directed to EN-TER JUDGMENT for defendant.

IT IS SO ORDERED.