[No. 41404-6-I.   Division One.   November 22, 1999.]

THE CITY OF BELLINGHAM, *Respondent*, v. WAYNE CHIN, ET
AL., *Appellants*.

*William Joseph Johnston*, for appellants.
*Brian Michael McQuaid, City Attorney*, for respondent.

Kennedy, C.J. — This is an appeal of a drug nuisance

abatement order entered under authority of chapter 7.43 RCW, which authorizes the superior court to require closure for up to a year of any building or unit within a building that is used for the purpose of unlawfully trafficking in controlled substances. Wayne Chin, the owner of Danny's Tavern and Cardroom in Bellingham, contends that the trial court lacked statutory authority to enter the order because he was not given adequate notice by the City of Bellingham that his tavern was being used for drug trafficking before the action was brought, and because the statute applies only to houses and apartments and not to businesses such as taverns that are required to serve the public and that are adequately regulated in other sections of the law. Chin also maintains that he was entitled to a jury trial on the question of whether he had knowledge or constructive knowledge of the illegal drug activity going on at his tavern. Finally, he contends that the trial court erred by closing a portion of the abatement trial to the public in order to protect a confidential informant's personal safety and to preserve the integrity of an ongoing criminal investigation into drug trafficking in the City of Bellingham.

Substantial evidence supports the trial court's determination that Chin should have known that the sale and delivery of cocaine was occurring regularly at the tavern. We also conclude that chapter 7.43 RCW applies to businesses such as taverns, that Chin was not entitled to a jury trial, and that the trial court did not err by closing a portion of the trial to the public. Accordingly, we affirm the abatement order.

## FACTS

On July 18, 1997, the City of Bellingham (City) filed a complaint for injunctive relief, seeking an order of abatement against Danny's Tavern and Cardroom (Danny's Tavern) and its owner Wayne Chin. Danny's Tavern was closed by preliminary injunction on July 18, 1997. A full hearing was held shortly thereafter.

The Bellingham police department had been aware of drug activity at the tavern and cardroom for quite some time. Neighboring businesses made several complaints to police regarding the drug activity. They specifically complained about the drug paraphernalia frequently found around their own premises. Some neighboring businesses erected fences and made other environmental changes to keep Danny's Tavern patrons off their property. The neighbors saw drug transactions occurring around the tavern among people they recognized as patrons of Danny's Tavern.

Bellingham police focused an investigation on Danny's Tavern, which investigation revealed ongoing open and obvious criminal drug activity in and around the tavern, including controlled buys by several confidential informants and narcotics purchases by undercover police officers from patrons of the tavern. This was the basis for the request for injunctive relief. Witnesses from surrounding businesses and confidential informants testified to obvious and flagrant drug dealing and activity around Danny's Tavern. After Danny's Tavern was closed by preliminary injunction, the neighboring businesses noticed immediate "relief" from discarded drug paraphernalia and other typical drug activity.

The Bellingham police believed that Wayne Chin, the tavern owner, was fully aware of the flagrant drug dealing in and around the tavern. He had been warned on several occasions that, as a tavern owner, he was responsible for controlling illegal activity in and around his premises. Many of these warnings came from a liquor control officer, who warned Chin about the potential loss of his liquor license, as well as drug nuisance abatement actions that could close the tavern down. The bartenders answering the tavern's phone were overheard by informants to say, "[W]hat pharmacist do you want to talk to?"— "pharmacist" being slang used to describe drug dealers. Undercover confidential informants made numerous buys in and around the tavern. The undercover police investiga-

tion resulted in the arrest of more than 10 regular customers of Danny's Tavern.

On July 8, 1997, the Bellingham police sent letters to all owners of liquor establishments in the greater Bellingham area, including Chin, concerning the possession and sale of illegal narcotics around several unnamed liquor establishments. In the letter, the police asked Chin and the other owners to be attentive to the potential for illegal narcotics activity in their establishments and offered to work with them in eliminating the problem. Chin does not dispute that he received this letter. He reacted by putting his two bartenders in charge of being on the lookout for illegal drug activity, and his attorney wrote to the police, in response to the letter, that he had also warned Chin of this type of activity in and around his business premises, and that Chin was addressing the problem. But drug sales at Danny's Tavern continued unabated, despite the warnings. The tavern was closed by way of a preliminary injunction on July 18, 1997.

A hearing on whether the tavern constituted a drug nuisance was held. By prehearing motion, the City sought a closed hearing for purposes of the testimony of one of its undercover confidential informants, who had already been roughed up by persons who suspected that he was working with the police, and who was still actively working with the police in ongoing drug investigations where suspects remained at large. Chin objected to closing any portion of the proceedings. After argument and comment from those in the courtroom, including members of the press, the court ordered a closed hearing, but only for the testimony of this one witness. The remainder of the trial remained open to the public. Chin and his counsel were present for the closed portion of the hearing. The transcription of the confidential informant's testimony was sealed for a period of six months and the City was given leave to seek additional time to pursue ongoing operations or protect the witness further. The City did not seek additional time, however, and after the six-month term the transcript of the witness's testimony was released.

In another prehearing motion, Chin sought a jury trial, likening the abatement proceeding to an in rem action for forfeiture of property. The trial court denied the request, indicating that the action was one in equity for which a jury trial was not available.[1]

The trial court found that Danny's Tavern constituted a drug nuisance, that Chin should have known about the ongoing drug dealing at his premises, in that it was pervasive and flagrant, and because he worked in the tavern cardroom virtually every day except Sundays. The court found that Chin had made no effort to prevent the drug activity from occurring at the tavern, instead delegating this responsibility to his bartenders. The court determined that the bartender who testified that he was not aware of any drug activity in and around the tavern "was not a credible witness." The court ruled that abatement for up to a year was the appropriate remedy under the statute. Chin was given the opportunity to immediately reopen his establishment, however, by posting a uniformed security guard on the premises, or by complying with a series of changes in his manner of operations designed to assure the court that Chin would make a good-faith effort to prevent his tavern from being used for trafficking in illegal drugs. Chin was given leave, at any time before the year expired, to petition to lift the abatement order, but the order also provided that if he were to reopen and the nuisance were to recur, the tavern would be closed down again, until a full year of closure had expired.

This timely appeal followed.[2]

---

[1]Chin also unsuccessfully challenged the drug abatement statute on constitutional grounds below; these challenges have been abandoned on appeal.

[2]It is unclear from the record on appeal whether Danny's Tavern remained closed for a year or any significant portion thereof during the pendency of this appeal. An appeal is moot and should be dismissed if it presents purely academic issues and it is not possible for the court to provide effective relief—unless the appeal raises questions of continuing and substantial public interest that are likely to recur. *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). Here, even if the abatement order has expired by its own terms, we deem the questions raised to

## DISCUSSION

[1] We review the granting of an injunction for an abuse of the trial court's discretion.[3] The trial court has broad discretion to fashion an injunction that is appropriate to the facts, circumstances, and equities before it, and we, as the reviewing court, give great weight to a trial court's exercise of discretion.[4] A trial court abuses its discretion when a decision is arbitrary, manifestly unreasonable, or based upon untenable grounds.[5] A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law.[6]

Chin claims that there was insufficient evidence to support a finding that he was given requisite notice of the existence of a drug nuisance on the premises of Danny's Tavern before the action was brought. Chin contends that RCW 7.43.020 requires the City to give him actual, specific notice of the drug activity occurring on his tavern premises as a predicate for seeking an abatement order. Three sections of the statute, when read together, indicate otherwise.

RCW 7.43.010, which authorizes injunctions in cases of drug nuisances, states as follows:

> (1) Every building or unit within a building used for the purpose of unlawfully manufacturing, delivering, selling, storing, or giving away any controlled substance as defined in

---

be of substantial and continuing public interest. The City has not sought dismissal of the appeal on grounds that it is moot. Moreover, at oral argument, the City advised the court that it believed the issues raised are likely to recur. Accordingly, we have elected to review the appeal without further inquiry into the possibility that it is moot.

[3]*Blair v. Washington State Univ.*, 108 Wn.2d 558, 564, 740 P.2d 1379 (1987) (citing *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[4]*Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986).

[5]*Junker,* 79 Wn.2d at 26.

[6]*Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

chapter 69.50 RCW, legend drug as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW, and every building or unit within a building wherein or upon which such acts take place, is a nuisance which shall be enjoined, abated, and prevented, whether it is a public or private nuisance.

(2) As used in this chapter, "building" includes, but is not limited to, any structure or any separate part or portion thereof, whether permanent or not, or the ground itself.

RCW 7.43.020 sets forth what must be contained in the complaint and supporting affidavit. The section states:

The action provided for in RCW 7.43.010 shall be brought in the superior court in the county in which the property is located. Such action shall be commenced by the filing of a complaint alleging the facts constituting the nuisance.

Any complaint filed under this chapter shall be verified or accompanied by affidavit. *For purposes of showing that the owner or his or her agent has had an opportunity to abate the nuisance, the affidavit shall contain a description of all attempts by the applicant to notify and locate the owner of the property or the owner's agent.*

In addition, the affidavit shall describe in detail the adverse impact associated with the property on the surrounding neighborhood. "Adverse impact" includes, but is not limited to, the following: Any search warrants served on the property where controlled substances were seized; investigative purchases of controlled substances on or near the property by law enforcement or their agents; arrests of persons who frequent the property for violation of controlled substances laws; increased volume of traffic associated with the property; and the number of complaints made to law enforcement of illegal activity associated with the property.

After filing the complaint, the court shall grant a hearing within three business days after the filing.

(Emphasis added.)

RCW 7.43.080 sets forth what must be contained in an order of abatement and provides the requisites for an order of abatement. That section of the statute states:

(1)   Except as provided in subsection (2) of this section, if the existence of the nuisance is established in the action, an order of abatement shall be entered as part of the final judgment in the case. Plaintiff's costs in the action, including those of abatement, are a lien upon the building or unit within a building. The lien is enforceable and collectible by execution issued by order of the court.

(2)   If the court finds and concludes that the owner of the building or unit within a building: (a) Had no knowledge of the existence of the nuisance or has been making reasonable efforts to abate the nuisance, (b) has not been guilty of any contempt of court in the proceedings, and (c) will immediately abate any such nuisance that may exist at the building or unit within a building and prevent it from being a nuisance within a period of one year thereafter, the court shall, if satisfied of the owner's good faith, order the building or unit within a building to be delivered to the owner, and no order of abatement shall be entered. If an order of abatement has been entered and the owner subsequently meets the requirements of this subsection, the order of abatement shall be canceled.

Chin claims the evidence provided by a liquor control agent of warnings in late 1993 to Chin regarding the fencing of goods and other potential illegal activities, including drugs at the tavern, and the letter sent by Bellingham police on July 8, 1997 to area liquor establishments, did not constitute sufficient notice of a drug problem at Danny's Tavern. Chin asserts that under the statute he was owed more specific notice of the drug problem at Danny's Tavern as a predicate for seeking an abatement order.

Although the actual notice given to Chin by the City was marginal, the statute requires the applicant for the abatement order only to describe its *attempts* to notify and locate the owner of the property for purposes of showing that the

owner or his agent has had an opportunity to abate the nuisance. The City complied with this description in its affidavit, although as recognized by the trial court, any specific notice to Chin from the City that drug activity was occurring at Danny's Tavern was marginal at best. But actual notice by the applicant is not an element of the abatement case that necessarily must be proved. Rather, the inquiry at the trial is whether the owner knew or should have known that the illegal drug nuisance activity was taking place—and if the owner had no actual or constructive knowledge, RCW 7.43.080 provides that the court shall not enter an abatement order.[7] Put another way, without actual or constructive knowledge, the remedy of abatement is not available to the applicant, but the statute does not require that the applicant provide actual notice as a prerequisite to bringing the action. The complaint is sufficiently verified if the applicant shows his efforts to notify and locate the owner or the owner's agent and describes in detail the adverse impact associated with the property on the surrounding neighborhood. Even where, as here, the applicant's efforts to notify the owner have been less than diligent, abatement is an appropriate remedy if the applicant can show at trial that, nevertheless, the owner or agent knew or should have known of the nuisance by some other means than direct notice from the applicant, and thus has had an opportunity to abate the nuisance.

The specific standard necessary to establish that the owner or his/her agent had actual or constructive knowledge of the existence of the nuisance is not set forth by the statute. However case precedent and statutory definitions of knowledge certainly provide sufficient analogy for the trial court and for this court to determine whether Chin

---

[7]See also RCW 7.43.100 (providing that a building or unit within a building shall not be sold to satisfy fees, costs and allowances unless the court finds by clear and convincing evidence that the owner of the building or unit had actual or constructive knowledge or notice of the existence of the nuisance).

and his agents knew or should have known about the activity in and around the tavern.[8]

To hold an owner to constructive knowledge of the uses of his property is not an unreasonable rule—particularly where, as here, the owner is present on the property virtually every day. "The suppression of a nuisance of which an owner has knowledge, or which is so long continued and under such circumstances that knowledge will be implied, is a burden attaching to the ownership of all property. The rule is as old as the law of nuisance itself."[9]

Chin and his agents at Danny's Tavern are hard pressed to argue that they did not have constructive notice of what was going on in and around the tavern. They had copious constructive notice in that they were present on a daily basis and the activity was flagrant, frequent, and obvious even to the neighboring businesses. The bartenders were heard to answer the phone using drug-culture jargon. Chin's attorney wrote the police that Chin was working on the problem, indicating that he had some knowledge that there was, indeed, a drug problem of some sort at Danny's Tavern. Although actual notice by the City was marginal, there was sufficient evidence for the trial court to find that Chin and his agents had constructive notice of the illegal drug activity in and about the premises.

Chin contends that application of this statute is limited to buildings in which people reside and may not be applied to businesses, particularly businesses such as taverns which are already heavily regulated, and which may even be shut down by the Liquor Control Board for al-

---

[8]See Enterprise Timber, Inc. v. Washington Title Ins. Co., 76 Wn.2d 479, 483, 457 P.2d 600 (1969) (one who has notice of facts sufficient to prompt a person of average prudence to inquire is deemed to have notice of all facts which reasonable inquiry would disclose). And see RCW 9A.08.010(1)(b) for a criminal statute definition of "knowledge" which includes that a person acts with or has knowledge if he has sufficient information that would lead a reasonable man in the same or similar situations to believe that facts exist.

[9]State ex rel. Kern v. Emerson, 90 Wash. 565, 571, 155 P. 579 (1916) ("red light" prostitution laws).

lowing drug activity on the premises.[10] Again, as set forth above, RCW 7.43.010 states:

(1)  Every building or unit within a building used for the purpose of unlawfully manufacturing, delivering, selling, storing, or giving away any controlled substance as defined in chapter 69.50 RCW, legend drug as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW, and every building or unit within a building wherein or upon which such acts take place, is a nuisance which shall be enjoined, abated, and prevented, whether it is a public or private nuisance.

(2)  As used in this chapter, "building" includes, but is not limited to, any structure or any separate part or portion thereof, whether permanent or not, or the ground itself.

Chin fails to consider the plain language of the statute. There is no language in the statute limiting it only to dwelling units. In fact, RCW 7.43.030, the section of the statute setting forth the application for a temporary restraining order or preliminary injunction, discusses stock in trade, inventories, and business transactions. The Legislature obviously contemplated that an abatement proceeding may be brought against a business. There is no merit to this argument.

Chin appeals the trial court's decision to reject his jury demand. Chin argues that the nuisance statute operates like an in rem forfeiture in that the commission of crime by persons other than the owner triggered the sanctions of the statute, thus trial by jury on the issue of knowledge or constructive knowledge of the owner should have been allowed.

■ ■ Although Washington Constitution article I, section 21 provides that "[t]he right of trial by jury shall remain inviolate," it has long been held that in a civil action, a right to a jury trial exists only where the action is

___

[10]See RCW 66.08.150(4) and WAC 314-16-120(4). Chin brought to the attention of the trial court that the Liquor Control Board had shut Danny's Tavern down for the same reasons the City brought this abatement action.

72

purely legal in nature, not when it is equitable in nature.[11] The overall nature of a civil action is determined by considering the issues raised by all the pleadings. In determining whether the case is primarily equitable or legal in nature, the trial court has wide discretion, the exercise of which will not be disturbed except for a clear abuse.[12] Generally, a suit for an injunction is an equitable proceeding with considerable inherent discretion vested in the trial court.[13] In a prostitution nuisance abatement case of long ago, the State Supreme Court held that a jury in an action brought in equity cannot be demanded.[14]

Here, we cannot say that the trial court abused its discretion. Although a specific portion of the drug nuisance injunction statute, RCW 7.43.100, addresses forfeiture proceedings maintained in conjunction with a drug nuisance injunction, the City did not proceed with a forfeiture action pursuant to RCW 69.50.505. Neither did the City allege that Chin was selling illegal drugs himself. The proceeding was brought as a nuisance action to abate the flagrant selling of drugs at Danny's Tavern. As such the action sounded in equity. Moreover, the trial court was not unmindful of the fact that severe economic consequences might result due to the issuance of the injunction and, therefore, gave Chin the opportunity to reopen the business in short order. Because this was not a proceeding for the forfeiture of Chin's property, the trial court did not err in going forth without a jury.

Finally, Chin challenges whether part of a civil trial may be closed to the public, over objection, in order to protect a confidential informant and to protect the integrity of ongoing police investigations. Before the hearing, the City sought, and was granted, a closed hearing during the

[11]*King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 718, 846 P.2d 550 (1993); *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980).

[12]*Lane*, 68 Wn. App. at 718 (citing *Brown*, 94 Wn.2d at 368).

[13]*Tradewell Stores, Inc. v. T.B.&M., Inc.*, 7 Wn. App. 424, 500 P.2d 1290 (1972).

[14]*See State ex rel. Dow v. Nichols*, 83 Wash. 676, 678-80, 145 P. 986 (1915).

testimony of one witness, a confidential informant. The City asserted the partially closed hearing was necessary to protect the confidential informant's safety. This informant had already been roughed up once during another drug investigation, and closure during his testimony was sought to protect two other ongoing investigations in which the informant was taking part. The trial court, using what has been called the *Ishikawa* method,[15] balanced the interests of the parties involved versus the right of an open and public trial. The court ordered the proceedings closed during the testimony of one confidential informant. The trial court limited this closure by sealing the testimony for a determinate period of six months.

Chin asserts that there is no precedent for closing any portion of a civil proceeding under the state constitution, and that the reasons given by the City were not compelling in any event. Chin also maintains that the order to close was unlawful because of an inadequate showing under the five-prong *Ishikawa* test.

In *Cohen v. Everett City Council*,[16] the Supreme Court, in overturning a trial court's sealing of a court record in a civil proceeding after the trial court decided the case on the merits, indicated that "absent any of the statutory exceptions or compelling reasons calling for exercise of the court's inherent power to control its proceedings, we must determine whether the trial court's action in this case had reached a stage where justice was being 'administered' and therefore constitutionally required to be open." The court noted these rights pertained to criminal proceedings as the norm, but seemingly adopted a position that included the possibility of restrictions on the hearing in civil matters. The *Cohen* court did not establish any methodology for determining when a court could exercise its inherent power in a civil case.

Our State Supreme Court has developed a strict,

---

[15]*See Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

[16]*Cohen v. Everett City Council*, 85 Wn.2d 385, 388-89, 535 P.2d 801 (1975).

well-defined standard for closing a hearing in opposition to the public's right to open proceedings under article I, section 10 of the Washington Constitution. This procedure is what is referred to as the *Ishikawa* method in criminal proceedings and is set forth succinctly in the court's subsequent opinion in *State v. Bone-Club*:[17]

1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose.[18]

These criteria should logically be extended to those few situations in civil proceedings where a party seeks to close a hearing. The public's right to access to court proceedings is not absolute.[19] The City and the trial court acknowledged that a civil litigant has a separate, clear, and specific right to openly administered justice. But this right must be balanced against the public right or another's right, depending on the basis for the closure motion.

Here, the trial court did just that. It used the approved method to determine the compelling need for closing a

---

[17]*State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

[18]*Bone-Club*, 128 Wn.2d at 258-59 (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)); *see also Ishikawa*, 97 Wn.2d at 36-39; *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 62-65, 615 P.2d 440 (1980).

[19]*Ishikawa*, 97 Wn.2d at 36; *Cohen*, 85 Wn.2d at 388.

small portion of the trial. The court found that the requisite showing was made by the City, identifying two interests justifying the partial closing: (1) the informant's personal safety, and (2) the integrity of the ongoing criminal investigations. The court went on to discuss the other four criteria of the *Ishikawa* method before ordering the hearing closed when the one informant took the stand. This included asking for objections from those present in the courtroom, including members of the press, and limiting the duration of the sealing of the transcript to a period of six months. No one suggested to the trial court, and no one has suggested to us, that any lesser restrictive means would have protected the threatened interests.

The trial court did not err in closing the proceedings during the testimony of the confidential informant and by sealing the transcript of the informant's testimony for a period of six months. The court properly applied the *Ishikawa* criteria in determining that the interests of the informant's safety and the integrity of the ongoing police investigation outweighed the public interest, or Chin's interest in opening the limited portion of the trial.[20]

The abatement order is affirmed.

AGID and APPELWICK, JJ., concur.

Review denied at 140 Wn.2d 1026 (2000).

---

[20]*But see* Justice Dolliver's concurring opinion in *Ishikawa*, 97 Wn.2d at 46, opining that the protection of witnesses is the responsibility of law enforcement agencies, not the courts through secrecy orders. Two other interests were at stake in *Ishikawa*, however: the fair trial of the defendant in the underlying criminal proceedings; and the integrity of the ongoing criminal investigation of the murder of the victim in that criminal proceeding.