278

[Nos. 27315-6-III; 27600-7-III;   Division Three.   September 16, 2010.]
27718-6-III; 27723-2-III.

HANSON INDUSTRIES, INC., *Respondent*, v. ORVIS D. KUTSCHKAU, JR., ET AL., *Appellants*.

*Peter A. Witherspoon* and *Lawrence W. Garvin* (of *Workland & Witherspoon*), for appellants.

*Craig M. Liebler* and *Ronald F. St. Hilaire* (of *Liebler Connor Berry & St Hilaire PS*); and *Jennifer T. Barnett* and *Joseph A. Rehberger* (of *Cascadia Law Group PLLC*), for appellants/cross-respondents.

*Brian H. Miller*, for respondent.

¶1 KULIK, C.J. — The central controversy here is a dispute between private parties over the ownership of a water permit application. In 1995, property owners Orvis and Elaine Kutschkau sold their property, known as the U&I Sugar Plant, to Hanson Industries Inc. (Hanson).[1] Prior to the sale, the Kutschkaus filed a permit application with the Department of Ecology (Department) to withdraw artificially stored ground water (ASGW) from the Quincy Groundwater subarea.

¶2 Numerous disputes relating to this business relationship arose between the Kutschkaus and Hanson. The parties agreed to resolve all issues in a negotiated agreement, the "1995 Settlement Agreement." The permit application was not specifically identified in the agreement. At the time of this lawsuit, the property was owned by Central Terminals.

---

[1] The property was conveyed to Hanson Processing LLC, a predecessor of Hanson Industries Inc.

¶3 We conclude that the plain language of the 1995 Settlement Agreement resolved the question of the ownership of the permit application in favor of Hanson. Accordingly, we affirm the trial court's grant of summary judgment in favor of Hanson. We also affirm the trial court's judgment on the pleadings against Central Terminals.

## FACTS

¶4 In 1986, the Kutschkaus purchased the former U&I Sugar Company in Moses Lake, Washington. The property was contaminated and required an environmental cleanup. To finance this cleanup, the Kutschkaus borrowed money from various lenders, including Hanson Processing LLC.

¶5 In 1995, the Kutschkaus submitted an application for a permit to use ASGW to the Department. The permit application identified three existing wells from which the Kutschkaus sought to draw ASGW.

¶6 The application was signed by Mr. Kutschkau. When Mr. Kutschkau signed the application form, his name was the only name appearing as the applicant. At some point, the name "Hanson Processing LLC," was added to the applicant box on the application form. Clerk's Papers (CP) at 470. Mr. Kutschkau testified that he did not write this name on the application form and that he did not ask anyone else to do so. The parties agree that a water permit has never been issued based on this permit application.

¶7 In 1995, Hanson filed a lawsuit against the Kutschkaus related to their financial agreement. The parties, represented by counsel, then negotiated the 1995 Settlement Agreement. The Kutschkaus agreed to convey the U&I property and certain personal property to Hanson in exchange for $1,000,000. Before the 1995 Settlement Agreement was signed, Hanson Industries and Hanson Processing had invested approximately $6.3 million on behalf of the Kutschkaus in developing the property. Of that total, Hanson Processing had paid out nearly $222,000 for the Kutschkaus' personal expenses.

¶8 The 1995 Settlement Agreement required that the Kutschkaus and Hanson draft and execute all documentation reasonably necessary to clear title to the property and to give effect to the intent and purposes expressed in the agreement. The Kutschkaus executed a quitclaim deed to the U&I property and conveyed certain items of personal property. The Kutschkaus did not expressly assign the water permit application to Hanson. The Kutschkaus also did not file an assignment form with the Department seeking to transfer the permit application to Hanson. The Kutschkaus and Hanson never sought the Department's consent to an assignment. Hanson and the Kutschkaus also negotiated and signed two addenda to the 1995 Settlement Agreement.

¶9 Almost immediately, Hanson conveyed the property to Columbia River Sugar Company. The real property changed hands several times until 2001 when Central Leasing of Washington LLC, now Central Terminals LLC, purchased the property.

¶10 In 1999 and 2001, the Kutschkaus filed breach of contract claims against Hanson Processing and Hanson. These cases were consolidated in Grant County Superior Court. In 2004, the parties mediated these cases and signed the "2004 Mediated Agreement." As part of this agreement, the parties agreed to release all claims pertaining to either party's breaches under the 1995 Settlement Agreement.

¶11 In 2006, the Kutschkaus sought to assign the permit application to the city of Quincy for $1.2 million. They designated themselves and Hanson as "holder of the application." CP at 768. The Department rejected the proposed assignment based on the Department's "uncertainty of the ownership of the original application." CP at 772. The Kutschkaus timely appealed the Department's refusal to take action on the assignment to the Pollution Control Hearings Board (PCHB). Later, the Kutschkaus and the city of Quincy terminated their assignment agreement.

¶12 In December, the Kutschkaus added Lamb Weston as a coapplicant to the permit application. The Kutschkaus

and Lamb Weston completed the Department's assignment form and filed the form with the Department. The Department agreed to act on the assignment after a court determined ownership of the permit application. The PCHB dismissed the appeal based on this agreement between the Kutschkaus and the Department.

¶13 Hanson filed suit, seeking declaratory relief naming Hanson as the sole owner of the permit application. In response, the Kutschkaus and Central Terminals each sought declaratory relief naming themselves as the sole owner of the application. They also asserted counterclaims and cross claims. Lamb Weston moved to intervene as a defendant based on its interest as a potential assignee. The court granted the motion to intervene.

¶14 The Kutschkaus and Lamb Weston moved for summary judgment. The Kutschkaus asserted that they owned the permit application. Lamb Weston argued that (1) any alleged assignment from the Kutschkaus to Hanson was invalid; (2) the 1995 Settlement Agreement did not convey or require the conveyance of ownership of the permit application from the Kutschkaus to Hanson; and (3) even if conveyance was required, the 1995 Settlement Agreement was no longer enforceable. In response, Hanson filed a cross motion for summary judgment arguing that the 1995 Settlement Agreement conveyed all of the Kutschkaus' interests in the property to Hanson, including the permit application.

¶15 The trial court denied the Kutschkaus' motion for summary judgment and Lamb Weston's motion for partial summary judgment, and granted Hanson's cross motion for summary judgment. In its oral ruling, the court explained that even though the permit application was not mentioned in the 1995 Settlement Agreement, the agreement nevertheless served to transfer the permit application to Hanson. The court concluded that the Kutschkaus had no legal or equitable interest in the permit application and, consequently, had no right to assign the permit application to Lamb

Weston. All claims made by the Kutschkaus and Lamb Weston against Hanson were dismissed with prejudice.

¶16 Lamb Weston moved for judgment on the pleadings against Central Terminals pursuant to CR 12(c). The Kutschkaus joined in this motion. Lamb Weston argued that ownership of the points of withdrawal did not grant ownership of the permit application and that the permit application was never properly assigned to Central Terminals. Hanson asked the court to enter judgment on the pleadings holding that Hanson was the sole owner of the permit application.

¶17 Lamb Weston moved for revision of the court's prior rulings on summary judgment pursuant to CR 54(b). In support of this motion, Lamb Weston submitted the declaration of Timothy Reierson and the declaration of Orvis Kutschkau. Hanson moved to strike these declarations. The court denied the motion for revision and struck the declarations.

¶18 Initially, the court granted judgment on the pleadings in favor of Hanson. The court later reversed this decision on reconsideration. The court granted Lamb Weston's motion for judgment on the pleadings against Central Terminals, concluding that Central Terminals had no legal or equitable interest in the application. The court also entered a final judgment granting Hanson partial summary judgment.

¶19 Lamb Weston and the Kutschkaus appeal the trial court's orders on summary judgment. Central Terminals appeals the judgment on the pleadings. This court consolidated the appeals.

## ANALYSIS

### I.  STANDARD OF REVIEW

¶20 A. *Summary Judgment.* An order of summary judgment is reviewed de novo. This court engages in the same inquiry as the trial court and views the facts in the

light most favorable to the nonmoving party. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). Questions of law and questions of statutory interpretation are reviewed de novo. *Enter. Leasing, Inc. v. City of Tacoma, Fin. Dep't*, 139 Wn.2d 546, 551-52, 988 P.2d 961 (1999).

¶21 B. *Judgment on the Pleadings.* When reviewing an order for judgment on the pleadings, the appellate court reviews the facts, as alleged in the pleadings, in the light most favorable to the nonmoving party. *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 715, 197 P.3d 686 (2008). Questions of law are reviewed de novo. *Id.* However, conclusions of law and nonfactual allegations are not deemed admitted for purposes of the motion. *Pearson v. Vandermay*, 67 Wn.2d 222, 230, 407 P.2d 143 (1965) (quoting *Hodgson v. Bicknell*, 49 Wn.2d 130, 136, 298 P.2d 844 (1956)). If, after accepting the factual allegations as true, there exists a dispositive question of law, the case is ripe for resolution on the pleadings. *See Gem Trading Co. v. Cudahy Corp.*, 22 Wn. App. 278, 283 n.1, 588 P.2d 1222 (1978), *aff'd*, 92 Wn.2d 956, 603 P.2d 828 (1979).

¶22 C. *Motion To Strike Declarations.* This court reviews the trial court's ruling on a motion to strike for an abuse of discretion. *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

II. Summary Judgment in Favor of Hanson, Denial of Kutschkaus' Motion for Summary Judgment, and Lamb Weston's Motion for Partial Summary Judgment

¶23 The court denied the Kutschkaus' and Lamb Weston's motion for summary judgment and granted Hanson's cross motion for summary judgment. The court also denied Lamb Weston's motion for reconsideration. In its final order, the court concluded:

Kutschkau has no legal or equitable ownership, right or interest of any nature whatsoever in the Application and has no right to assign the Application to any third party, including without limitation Lamb Weston. All claims made by Kutschkau and Lamb Weston against Hanson Industries in this litigation are dismissed with prejudice.

CP at 1185.

¶24 The Kutschkaus and Lamb Weston ask this court to reverse the trial court's entry of summary judgment and to enter summary judgment in their favor.

¶25 A. *Settlement Agreement.* Hanson argues that the Kutschkaus transferred their interest in the permit application to Hanson by virtue of the 1995 Settlement Agreement. The Kutschkaus and Lamb Weston argue that the permit application was not included in this agreement.

¶26 The interpretation of an unambiguous contract presents a question of law. *Paradiso v. Drake*, 135 Wn. App. 329, 334, 143 P.3d 859 (2006). The parties agree that the 1995 Settlement Agreement was unambiguous. The 1995 Settlement Agreement makes no specific mention of the permit application. The agreement provided, in part:

Kutschkau hereby agrees to execute an original of the Quit Claim Deed, Attachment 1 hereto, and otherwise agrees to hereby deed, transfer, and assign to Hanson, any right over, title to, *or interest in or related to the Property*, including, but not limited to, water and mineral rights, and any lease, commercial agreement, or option to purchase or exercise any right, title, or interest in or control over the Property, or real estate or personal property which was once part of the Property, which Kutschkau has by way of any form of document, lease, deed, title right, option or other form of written or oral agreement related thereto. This includes any and all rights founded in law (including, but not limited to, contract or common law) or equity, including any and all claims and/or choses in action therefor (collectively "rights").

CP at 479 (emphasis added).

¶27 The parties defined the term "property" to include real estate, which real estate is more fully described in Exhibit "A" to the Quit Claim Deed, Attachment 1 hereto, and buildings, structures, goods, equipment, crops, water rights, minerals, raw materials, process materials, and other personal property located thereon (including a large reserve of what is commonly referred to as "sugar lime"), much of which was the former U&I sugar plant lying in and about Section 20, Township 19 N, Range 29 E.W.M., Grant County, Washington, the foregoing real and personal property collectively referred to as "the Property."

CP at 478.

¶28 Paragraph 22 of the 1995 Settlement Agreement required the Kutschkaus and Hanson to draft and execute all documentation reasonably necessary to clear title to "the Property, to give effect to the intent and purposes expressed in this Agreement." CP at 483.

¶29 Read together, the provisions of the 1995 Settlement Agreement required the Kutschkaus to transfer to Hanson (1) the U&I real estate, (2) any "water rights," (3) any personal property located on the U&I property, and (4) any "interest in or related to the Property." CP at 479. At issue here is a water permit application. Until a water permit is granted, the application merely serves to save the applicant a place in line to obtain a permit based on the application's original date of filing. The 1995 Settlement Agreement encompassed the permit application under the phrase "any right over, title to, or interest in or related to the Property." CP at 479.[2]

¶30 The Kutschkaus argue that the 2004 Settlement Agreement supersedes all prior agreements and acts as a bar to this litigation. In fact, the Kutschkaus entered into several settlement agreements with Hanson that contained general language concerning the parties' intent to resolve the dealings between them.

---

[2] Because we conclude that the permit application is included in the term "interest," we need not consider here whether the permit application constitutes real or personal property. This question is addressed in section III.

¶31 We conclude the 1995 Settlement Agreement is dispositive. The plain language of the 1995 Settlement Agreement includes the permit application as an "interest in or related to the Property." Consequently, the 1995 Settlement Agreement transferred the permit application to Hanson. The trial court did not err by concluding that the Kutschkaus had no interest in the permit application and, thus, had no right to assign the permit application to Lamb Weston.

¶32 Lamb Weston contends that if this court decides the 1995 Settlement Agreement alone transferred the Kutschkaus' interest in the permit application, summary judgment is precluded by disputed issues of fact regarding mutual intent.

¶33 In their motions for summary judgment, Lamb Weston and the Kutschkaus both argued that the 1995 Settlement Agreement was unambiguous and must be determined as a matter of law. However, on appeal, Lamb Weston and the Kutschkaus assert that the trial court erred by granting summary judgment to Hanson because there were disputed issues of material fact as to the parties' mutual intent.

¶34 Under the context rule, a court may consider extrinsic evidence to determine the parties' intent. *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). To this end, a party may offer extrinsic evidence of intent to help the court interpret a term in either an unambiguous or an ambiguous contract. *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 775, 202 P.3d 960 (2009).

██ ██ ¶35 Here, Lamb Weston and the Kutschkaus asked the trial court to interpret the 1995 Settlement Agreement as a matter of law and presented no alternative argument as to the intent of the parties. Because the argument as to the parties' intent was not raised at trial, it cannot be asserted for the first time on appeal. *Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008); RAP 2.5(a).

¶36 This omission aside, we note that Mr. Kutschkaus testified at his deposition that the intent of the 1995 Settlement Agreement was for the Kutschkaus to divest themselves completely from their interests in the sugar company property, both real and personal, and also to resolve the adversarial relationship and the litigation between the parties. In his declaration in support of the motion for summary judgment, Mr. Kutschkau stated that he never assigned, sold, or conveyed the permit application to Hanson or Central Terminals. A party to litigation cannot create a material issue of fact by submitting a declaration contradicting his own deposition. *See Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 379, 972 P.2d 475 (1999) (quoting *Duckworth v. Langland*, 95 Wn. App. 1, 7-8, 988 P.2d 967 (1998)).

¶37 Lamb Weston next contends Hanson's cross motion for summary judgment was untimely. CR 56(c) requires any moving party for summary judgment to serve its motion and any supporting affidavits "not later than 28 calendar days before the hearing." Neither Lamb Weston nor the Kutschkaus requested a continuance in the trial court. According to Lamb Weston, this case must be remanded to allow Lamb Weston an opportunity to respond to any motion by Hanson under CR 56(c).

¶38 A reviewing court will not reverse a lower court's ruling on the basis of an untimely filing absent a showing of prejudice. *See Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 364, 617 P.2d 704 (1980) (dealing with the time limits of CR 6(d)). The trial court did not abuse its discretion by accepting Hanson's late-filed motion. Neither Lamb Weston nor the Kutschkaus have demonstrated any resulting prejudice.

¶39 Lamb Weston argues that the trial court erred by denying Lamb Weston's motion for revision of the summary judgment order. The summary judgment order was entered on July 28, 2008, and Lamb Weston's declarations supporting its motion were filed on August 20. The final judgment on the order granting partial summary judgment was

entered on November 7. Lamb Weston argues that revision was necessary because the trial court did not resolve the claims brought by Central Terminals.

¶40 Absent the entry of a final judgment, the order is subject to revision at any time. CR 54(b). Significantly, Central Terminals challenges the judgment on the pleadings, not the orders on summary judgment. Given the circumstances here, the court did not err by denying Lamb Weston's motion for revision.

¶41 Lamb Weston also contends that the court abused its discretion by striking the declarations of Mr. Kutschkau and Mr. Reierson. Lamb Weston argues that the declarations were necessary to respond to Hanson's arguments relating to RCW 90.03.310. In the trial court, Lamb Weston argued that the declarations were necessary to show the Department's practice and interpretation of the law.

¶42 The striking of the declarations is a matter of discretion. A court abuses its discretion when its decision is arbitrary, manifestly unreasonable, or based on untenable grounds. *City of Bellingham v. Chin*, 98 Wn. App. 60, 66, 988 P.2d 479 (1999). The issues here are decided as a matter of law. The declarations of Mr. Reierson and Mr. Kutschkau were unnecessary to resolve this case. The court did not err by striking the declarations.

¶43 B. *Assignment under RCW 90.03.310.* The 1995 Settlement Agreement transferred the property to Hanson. The Kutschkaus and Lamb Weston argue that Hanson's failure to follow the Department's mandatory procedure to obtain an assignment of the permit application renders any purported transfer of the permit application to Hanson invalid. It is undisputed that Hanson and the Kutschkaus never filed an assignment form with the Department and never obtained the Department's consent for any transfer of the permit application.

¶44 The Kutschkaus, however, did attempt to assign the application permit to the city of Quincy and, later, to Lamb Weston. When the Department refused to act on the assign-

ment, the Kutschkaus appealed to the PCHB. The PCHB, based on the agreement between the Department and Kutschkaus, dismissed the appeal. Order of Dismissal, *Kutschkau v. Dep't of Ecology*, No. 07-050 (Wash. Pollution Control Hr'gs Bd. Feb. 12, 2008). The Department now stands ready to act on the permit application once ownership of the application is resolved. Here, the parties' arguments about compliance with RCW 90.03.310 are premature until the owner is determined by this appeal. The assignment procedures required by RCW 90.03.310 come into play now that Hanson has been judicially determined to be the owner of the permit application.

¶45  C. *Application Form.* The Kutschkaus argue that the court erred when it failed to examine the permit application to determine its ownership. The Kutschkaus assert that these factual disputes are material and preclude summary judgment.

¶46 The argument as to whether Hanson signed the application is not relevant here. Hanson does not assert that it is a coapplicant on the permit application. Instead, Hanson makes its arguments under the 1995 Settlement Agreement. There is no issue of material fact precluding summary judgment. The facts related to the signing of the permit application are not relevant.

III.  JUDGMENT ON THE PLEADINGS

¶47 On reconsideration, the trial court granted Lamb Weston's motion for judgment on the pleadings against Central Terminals. The court concluded that Central Terminals had no interest in the permit application. In doing so, the court adopted Lamb Weston's argument that the permit application constitutes personal property.

¶48 Central Terminals argues that water rights and interests in water rights are appurtenant to real property and, as such, the permit application was conveyed to Central Terminals when it obtained title to the land containing the points of withdrawal. Central Terminals asserts that its interest in the permit application is based on its

ownership of the real property identified in the application. The remaining parties contend that the permit application constitutes personal property.

¶49  Central Terminals relies on Washington cases holding that a water right is an interest in real property appurtenant to the property once a permit is issued and the water is put to beneficial use. *See, e.g., Foster v. Sunnyside Valley Irrigation Dist.*, 102 Wn.2d 395, 687 P.2d 841 (1984). Central Terminals also relies on public policy and cases from other jurisdictions.

¶50  Under RCW 90.03.380(1), a water right is not appurtenant to the property unless the permit has been granted and the water has been put to beneficial use. Specifically, RCW 90.03.380(1) states, "The right to the use of water which has been applied to a beneficial use in the state shall be and remain appurtenant to the land or place upon which the same is used." In *Public Utility District No. 1 of Pend Oreille County v. Department of Ecology*, 146 Wn.2d 778, 791, 51 P.3d 744 (2002), the court indicated that RCW 90.03.380(1) contained a " 'beneficial use' " requirement.

¶51  The language in RCW 90.03.380(1) establishes requirements as to time and location. The right to the use of water attaches to real property *after* the water has been put to beneficial use. And this right becomes appurtenant "to the land or place upon which the same is used." RCW 90.03.380(1). Here, there is no water right or location because a permit has not been issued and the water has not been put to beneficial use.

¶52  A decision of the PCHB is instructive. Order Granting *Buck v. Dep't of Ecology*, No. 06-018 (Wash. Pollution Control Hr'gs Bd. Aug. 3, 2006) involved the rights of subdivision homeowners under the developer's permit. *Buck* held that the rights associated with a water permit to receive notice of permit cancellation is held by the permit holder unless properly assigned to another. *Buck* resolved the issue of ownership in favor of the permit holder, not the property owner. *Buck* stated:

Generally speaking, legal rights associated with a water permit attach to the permit holder, not to the land or to the owner of the land where the water will be used. . . . It is not until a water right is perfected, through the issuance of a water right certificate, that rights attach to the property (and therefore the property owner). RCW 90.03.330. Permits and permit applications are considered personal property and must be assigned separately to be transferred.

Order Granting Summ. J., *Buck*, at 3.

¶53 Central Terminals is not the owner of the permit application merely because it is the owner of the property.

■ ¶54 Central Terminals next argues that an applicant has an inchoate or conditional right that attaches after the application is filed and before the permit has been issued and the water put to beneficial use. Central Terminals reasons that this inchoate right is an interest in real property because the perfected water right is a real property interest when put to beneficial use.

¶55 An "inchoate right" is

*"an incomplete appropriative right in good standing.* It comes into being as the first step provided by law for acquiring an appropriative right is taken. It remains in good standing so long as the requirements of law are being fulfilled. And it matures into an appropriative right on completion of the last step provided by law."

*Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 596, 957 P.2d 1241 (1998) (quoting 1 WELLS A. HUTCHINS, WATER RIGHTS LAWS IN THE NINETEEN WESTERN STATES 226 (1971)) (emphasis added). In *Theodoratus*, the court concluded that an applicant who had obtained a water permit had an inchoate right to water which had not yet been put to beneficial use. *Id.*

¶56 RCW 90.03.460 recognizes inchoate rights to divert and use water. RCW 90.03.460 states, in part:

Nothing in this chapter contained shall operate to effect *an impairment of any inchoate right to divert and use water* while the application of the water in question to a beneficial use is being prosecuted.

(Emphasis added.) The language of RCW 90.03.460 implies that an applicant must have an inchoate right to divert and use water in order for that right to be protected. Here, no party has an inchoate right to divert and use water because a permit has not been issued.

¶57 Central Terminals also argues that a permit application is an *interest* in a property right and, therefore, is itself real property. To support this argument, Central Terminals relies on *Madison v. McNeal*, 171 Wash. 669, 19 P.2d 97 (1933). In *Madison*, the court concluded that a water right or an interest in a water right is real property but that an inchoate or incomplete right is not real property. *Id.* at 675 (quoting 2 Clesson S. Kinney, A Treatise on the Law of Irrigation and Water Rights § 769, at 1328-29 (2d ed. 1912)). Hence, only perfected water rights are appurtenant to property. Here, we are dealing with a permit application that has yet to be granted.

¶58 Central Terminals does not have a property interest or an inchoate property interest in the permit application. The court did not err by granting judgment on the pleadings to the Kutschkaus and Lamb Weston.

## IV. Attorney Fees

¶59 The trial court awarded Hanson $42,790 in attorney fees and costs. This court will not disturb an award of attorney fees unless the trial court exercises its discretion in a manifestly unreasonable manner or bases its decision on untenable grounds. Here, the court based its award of attorney fees on the 2004 Settlement Agreement and the mutual release between the Kutschkaus and Hanson. Attorney fees can be awarded as part of the costs of litigation based on a contract, statute, or recognized equitable principles. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 797-98, 557 P.2d 342 (1976). The trial court did not abuse its discretion by awarding attorney fees and costs.

## V. Summary

¶60 We affirm the order denying Kutschkaus' and Lamb Weston's motions for summary judgment. We affirm

the grant of summary judgment in favor of Hanson determining that the Kutschkaus and Lamb Weston have no legal or equitable ownership right, or interest in the permit application, and no right to assign the application. Finally, we affirm the trial court's award of attorney fees and costs to Hanson and we award attorney fees and costs on appeal.

SWEENEY and BROWN, JJ., concur.

Reconsideration granted and opinion modified November 18, 2010.

Review denied at 171 Wn.2d 1011 (2011).